ATTORNEYS FOR APPELLANT
George A. Leininger
Gary K. Kemper
Madison, Indiana

ATTORNEY FOR APPELLEES
HERBERT S. HOUSEWORTH,
WILLIAM H. DRAMANN
RIPLEY COUNTY, INDIANA, AND
BOARD OF COMMISSIONERS OF
RIPLEY COUNTY, INDIANA
Donald B. Kite, Sr.
Carmel, Indiana

ATTORNEY FOR APPELLEES
HOLLY HOLT AND THE TOWN
OF OSGOOD
Kirk A. Horn
Carmel, Indiana

ATTORNEY FOR AMICUS INDIANA
SHERIFF'S ASSOCIATION
A. Howard Williams
South Bend, Indiana

ATTORNEYS FOR AMICI INDIANA
ASSOCIATION OF CITIES AND TOWNS
AND INDIANA MUNICIPAL LAWYERS
ASSOCIATION
Jon Laramore
A. Scott Chinn
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 15S01-0606-CV-239

GEORGE ROW,

*Appellant (Plaintiff below),*

v.

HOLLY HOLT, HERBERT HOUSEWORTH,
TOWN OF OSGOOD, INDIANA, WILLIAM
DRAMANN, SHERIFF OF RIPLEY COUNTY,
INDIANA, RIPLEY COUNTY, INDIANA,
BOARD OF COMMISSIONERS OF RIPLEY
COUNTY, INDIANA,

*Appellees (Defendants below).*

Appeal from the Dearborn Circuit Court, No. 15C01-0302-CT-014
The Honorable James D. Humphrey, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 15A01-0409-CV-405

_____

**April 24, 2007**

**Boehm, J.**

We hold that:

1) An arrest by a law enforcement officer without probable cause can give rise to civil liability for false arrest under Indiana common law.

2) Probable cause for purposes of civil liability for an arrest by a law enforcement officer is governed by the same standard imposed by the Fourth Amendment with respect to unlawful seizures and is evaluated in light of the information and circumstances available to the arresting officer at the time of the arrest.

3) An officer reasonably relying on information furnished by other officers is not civilly liable for false arrest even if the officer furnishing the information was not justified in considering it reliable.

**Factual and Procedural Background**

This is an appeal from a ruling on summary judgment. The standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Gunkel v. Renovations, Inc., 822 N.E.2d 150, 152 (Ind. 2005). All inferences are to be drawn in favor of the non-moving party. Id. Except where noted, the following facts are undisputed according to the evidence designated pursuant to Trial Rule 56(C).

For some time before the events giving rise to this case, George S. Row, known as "Sam," had been feuding with a family consisting of Kenneth Bowling Sr.; his children, Kenneth Bowling Jr., Keith Bowling, and Krystall Bowling Simon; and Krystall's husband, Vince Simon. Both Row and the Bowling/Simon family lived in the small town of Osgood, and the animosity

2

between them was common knowledge among the residents of the town, including Officer Holly Holt of the Osgood Police Department and her supervisor, the town marshal.

On September 4, 2001, the Ripley Superior Court granted simultaneous protective orders to Krystall Simon against Row and to Row against the Bowlings and the Simons. Shortly after noon on September 17, 2001, Row was lunching in a local restaurant when Kenneth Bowling Sr., who was "upset because he had been served with a protective order that morning," approached Row, shoved him in the shoulder, and screamed at him until a waitress asked Bowling to leave. Shortly after Bowling left the restaurant, Row left without finishing his lunch and was again confronted by Bowling in the parking lot where Bowling "made more profane statements." Row got in his car and drove away with Bowling following. As Row drove through town, he telephoned for help first from the town marshal and then from the Ripley County Sheriff's Department. Bowling ultimately stopped following Row, and Row returned to his farm.

That evening, Row dined at the same restaurant and, according to Row, drank two beers with dinner. Row then visited Frank Cox to discuss some construction work Row was planning. Cox's home was directly across the alley from the Simons' home. When Row left Cox's home he was approached by Vince Simon who demanded that Row talk to him. Row first stopped at his car and retrieved a tape recorder, which he placed in his shirt pocket. Krystall Simon then joined her husband in confronting Row.

A verbal and physical confrontation between the Simons and Row ensued. The testimony conflicts as to whether Row pushed Krystall first or whether she attempted to remove the tape recorder from his pocket and he pushed her arm away.[1] Both Row and the Simons said

---

[1] According to Row, as he was leaving Cox's house, Vince and Krystall Simon verbally attacked him, apparently angered by the receipt of the protective orders. Row said that Krystall asked him if he had a tape recorder and when Row responded he did, Krystall attempted to remove the recorder from his pocket and ripped the corner of his pocket in the process. Row said he "shoved her hand away and Vince, at this point, hit [Row] on the shoulder and told [Row] never to touch his wife." Cox, who had emerged from his house when he heard shouting outside, testified that throughout the incident Row "was trying to remain calm and simply get out of a situation that appeared to be getting worse." Cox also observed that Krystall Simon pushed Row, causing him to "fly backwards" and that at no time did Row "strike either Vince Simon or Krystall Simon." Cox testified, "the entire incident was instigated by Vince Simon and Krystall Simon." Krystall Simon gave the following account of the incident:

> I put my arm up to tell Vince to come on and forget it then [Row] struck me on my right shoulder. Then Vince grabbed [Row's] arm and said don't be hitting my wife. [Row]

3

they were calling the police. Row returned to his vehicle and drove home. The Simons, however, carried through on their promise and called the police, claiming a battery and also that Row was operating a vehicle under the influence of alcohol. As a result, Officer Holt received a dispatch that a battery had occurred at the Simon residence, and Ripley County deputy sheriff Herbert Houseworth was alerted to a possible drunk driver. Houseworth contacted Holt by radio, and Holt "described the domestic incident" and identified Row and the "general direction" he might be heading to his home. Holt arrived at the Simons' home where Vince and Krystall Simon told her that they and Row had gotten into an argument "about some papers that were served" on the Simons. The Simons reported that Row "was drinking, you could smell the alcohol on him," and that the encounter had been recorded on tape. The Simons also told Holt that Row "shoved Krystall back" and that Vince had grabbed Row's hand and said not to touch his wife.

Holt saw no evidence of physical injury but asked Krystall if she wanted to fill out a battery affidavit. Krystall filled in the blanks of the form Holt supplied, reading as follows, with the underlined portions filled in by Krystall:

> On or about the 17th day of September, 2001, in [name of county not visible on affidavit] County, State of Indiana, Sam Row did knowingly touch Krystall R. Simon in rude, insolent and angry manner, to-wit: Sam shoved Krystall in the right shoulder with his hand which touching resulting in bodily injury to shoulder.
>
> I understand that the investigating officer is relying upon my allegations set forth in this Affidavit as establishing Probable Cause for the arrest of the Defendant on the charge of Battery under I.C. 35-42-2-1.

Holt then asked Vince and Krystall Simon to write narrative statements and left statement forms for them to complete while Holt went to meet Houseworth at Row's house. Holt said she was at the Simon residence "[n]ot very long. Long enough to hear their side of the story, get the battery affidavit signed and go down the road." Holt did not speak to Cox or conduct any further investigation before going to Row's house.

When Row returned to his house, he had "two or three drinks" of whiskey before Holt and Houseworth arrived. Row "opened the door and invited them into [his] home." At that

---

replied that Vince was going to jail for battery and started yelling for Frank Cox to come out here to see if he seen Vince batter him. Frank never said a word.

point, Holt informed Row that they were there to arrest him for "assault" of Krystall Simon. Row testified: "I asked Dep. Holt what she was talking about and she informed me that Vince Simon and Krystall Simon Bowling [sic] had filed a complaint accusing me of assault."

The deposition testimony conflicts as to the events after the arresting officers entered Row's house. Holt agreed that Row "said he had a recording of what was going on. He said it was in the kitchen I believe." All agree that Row went to the kitchen to retrieve the tape. According to Holt, Row was "ranting and raving and cussing and whatnot," and as Holt reached back to retrieve the tape recorder from Row, "[Row] shoved [Holt] into the doorway yelling that we're not getting that, it's his evidence and [Row's] tired of everything being lost in Ripley County systems." Row denied pushing Holt. According to Row, he offered to play the recording of his argument with the Simons, but Holt rejected the offer and said they would take the tape as evidence. Row claimed that he asked the officers if they had spoken to Cox, who witnessed the incident, and they said they had not.

While Row was retrieving his recorder, Houseworth had left the house to improve his radio reception for a check of Row's identification. When he returned, "there was some more agitation in the air. [Holt and Row] were essentially arguing." Houseworth testified "Officer Holt advised me that she had been pushed, which I didn't witness, but with that taken into consideration and the signed battery affidavits I believe she was attempting to handcuff Mr. Row." Houseworth said he then handcuffed Row over Row's resistance. Holt also testified that Row resisted arrest.[2] Row denied resisting being handcuffed but remembered complaining that the handcuffs were too tight. In sum, there is conflicting evidence as to whether Row pushed Holt and whether Row resisted arrest after Holt and Houseworth attempted to cuff him.

After his arrest Row was held in jail for six and one-half hours. The Ripley County prosecutor did not charge Row. A special prosecutor was appointed, and a grand jury returned no indictments.

On September 13, 2002, Row filed a complaint for false arrest and false imprisonment against Holt and Houseworth, individually and in their capacities as law enforcement officers.

---

[2] Holt stated, "I got a cuff on him. He was resisting and wouldn't let me cuff him. I went to take him out and he wasn't moving. I couldn't move him. He had his feet planted, so Houseworth took him out." According to Holt, Houseworth had to finish cuffing Row because she "couldn't get it on him. He wouldn't hold his hand back there."

5

Row also named the Town of Osgood, the Ripley County Sheriff, and Ripley County and its Board of Commissioners as defendants. All defendants moved for summary judgment, asserting probable cause for Row's arrest and qualified immunity. Houseworth, the Sheriff, the county, and the Board of Commissioners (collectively "the county defendants") also argued that the facts established no viable claim against Deputy Sheriff Houseworth. The trial court granted summary judgment in favor of all defendants.[3] The Court of Appeals reversed, holding that there was no probable cause for Row's arrest and finding genuine issues of material fact precluding summary judgment. Row v. Holt, 834 N.E.2d 1074, 1089 (Ind. Ct. App. 2005). We granted transfer. Row v. Holt, 2006 Ind. LEXIS 565 (Ind. June 28, 2006).

## I. The Standard for Probable Cause

Row's complaints are based on common law causes of action for false arrest and false imprisonment.[4] He correctly observes that the governmental immunity for "enforcement of law" under the Tort Claims Act, Indiana Code section 34-13-3-3(8), does not extend to these torts.

A false arrest requires absence of probable cause. Earles v. Perkins, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003). Indiana Code section 35-33-1-1 provides:

> (a) A law enforcement officer may arrest a person when the officer has:
> (1) a warrant commanding that the person be arrested; . . .
> (4) probable cause to believe the person is committing or attempting to commit a misdemeanor in the officer's presence;
> (5) probable cause to believe the person has committed a:
>     (A) battery resulting in bodily injury under IC 35-42-2-1; or
>     (B) domestic battery under IC 35-42-2-1.3.
> The officer may use an affidavit executed by an individual alleged to have direct knowledge of the incident alleging the elements of the offense of battery to establish probable cause.[5]

---

[3] The trial court dismissed the Board of Commissioners pursuant to a joint motion filed by all parties, but the Board remained in the caption and was granted summary judgment along with the other county defendants.

[4] There is no claim asserted under 42 U.S.C. § 1983. The parties raise no issue as to the liability of the individual defendants in light of Indiana Code section 34-13-3-5(c) (2004). We agree with the conclusion of the Court of Appeals that "inasmuch as Row's claim for false imprisonment stems from his alleged false arrest, we need not make a separate analysis for the former." Row, 834 N.E.2d at 1089. Thus, our analysis, though discussed in relation to false arrest, applies equally to the false imprisonment claim.

[5] This section was amended after the events giving rise to this case with no change relevant to this case. See P.L. 133-2002 § 59.

6

## II. Probable Cause for Holt's Arrest of Row

The probable cause determination turns on "whether a reasonable person, under the facts and circumstances encountered by the arresting officer, would believe that the suspect had committed or was committing a criminal offense." Earles v. Perkins, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003); see also Sears v. State, 668 N.E.2d 662, 667 (Ind. 1996) (citing Green v. State, 461 N.E.2d 108, 112 (Ind. 1984)). This standard is an objective one and "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996).

The defendants contend that the Court of Appeals incorrectly applied a subjective approach, relied on post-arrest information, and gave too little deference to the arresting officers' discretion. We agree that some of the factors cited by the Court of Appeals are not appropriate in evaluating probable cause. We nevertheless agree with the ultimate conclusion of the Court of Appeals that probable cause for Holt's arrest of Row turns on disputed facts and cannot be resolved on summary judgment on this record.

### A. *Battery of Holt*

Row was arrested for three offenses: the battery of Krystall Simon, the battery of Officer Holt, and resisting arrest. The battery of Holt, if it occurred, was observed by Holt herself, and therefore was a proper subject of an arrest under subsection (4) as a misdemeanor, even if there was no bodily injury. The facts of this alleged battery are in dispute, so summary judgment cannot be sustained on this ground.

### B. *Resisting Arrest*

Even if the arrest for battery was invalid, resisting is still an independent offense. See, e.g., Shoultz v. State, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000) ("The general rule in Indiana is that 'a private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful.'" (quoting Casselman v. State, 472 N.E.2d 1310, 1315 (Ind. Ct. App. 1985))). The resisting charge was observed by both officers, but as to Holt these facts are also disputed and therefore present no basis for summary judgment.

C. *Battery of Krystall Simon*

This leaves us with the issue of whether either Holt or Houseworth had probable cause to arrest Row for the battery of Krystall Simon. Neither officer witnessed the alleged battery. The statute provides that an officer may "use" an affidavit to establish probable cause. In many cases an affidavit is sufficient to establish probable cause without more. But we agree with the Court of Appeals that an affidavit by a person claiming to have "direct knowledge of the incident" is not per se probable cause if there is other information known to the arresting officer at the time that would render it unreasonable to give unquestioning credence to the affidavit's facts or conclusion. Row, 834 N.E.2d at 1089. Specifically, because the alleged battery was not observed by the officer, under subsection (5) it must have been one inflicting bodily injury. Krystall's affidavit alleged bodily injury in conclusory terms but only because that term was contained in the fill-in-the-blanks affidavit Holt supplied to the Simons. Moreover, Holt had other information as well. First, she observed Krystall, the alleged victim, shortly after the incident. There was no evidence of any injury and no claim of pain or discomfort. Second, she knew of the animosity between Row and his accusers and the outstanding restraining orders which, by the Simons' own account, they had violated by approaching Row as he left Cox's house.

As we explained in Ogle v. State, 698 N.E.2d 1146, 1148 (Ind. 1998), "[t]he determination of probable cause is not one of mathematical precision, but rather is grounded on the notions of common sense." Although an officer often may rely on an affidavit alone, where that reliance contradicts "notions of common sense," the affidavit is insufficient to establish probable cause. Here, the information available to Holt did not support the reasonable conclusion that a felony battery of Krystall Simon had occurred. The Court of Appeals properly cited the affidavit of Row's expert, Officer Robert J. Snyder of the St. Matthews, Kentucky Police Department who has "over thirty years of experience in law enforcement," and who, based on these facts, would not have arrested Row because in his opinion the record did not support probable cause. Snyder testified that "any prudent law enforcement officer would have" conducted more investigation than Holt and Houseworth did before making an arrest. This is a fact specific determination based on the information available to Holt at the time. The Court of Appeals concluded that this testimony raised an issue of fact whether Officer Holt had been presented with information that a reasonable person would question was sufficient to establish

8

probable cause to arrest Row without a warrant. Row, 834 N.E.2d at 1085. We agree this is a sufficient basis to support the conclusion of the Court of Appeals that summary judgment was improperly granted as to Holt.

We do not agree with all of the reasoning of the Court of Appeals in reaching its conclusion that Holt and Houseworth lacked probable cause to arrest Row. The Court of Appeals identified several pieces of evidence in support of this conclusion. We think that three of these are not relevant to the probable cause determination. First, Holt and Houseworth testified that they usually conducted a broader investigation before arresting based on an affidavit. But failure to follow "usual" procedure is not necessarily evidence of lack of probable cause. Second, the court noted that Holt had in the past been reprimanded for conduct unreasonable for a law enforcement officer. Holt's history, however, does not bear on probable cause in this case. Finally, the fact that the grand jury did not indict Row is a post-arrest event that does not suggest anything about the reasonableness of the arrest. Evidence discovered or events occurring after an arrest do not factor into the probable cause inquiry. See Hunter v. Bryant, 502 U.S. 224, 228 (1991) (finding that probable cause determinations depend on facts and circumstances present "at the moment the arrest was made." (citations omitted)); Hirsch v. Burke, 40 F.3d 900, 904 (7th Cir. 1994), ("[P]ost-arrest evidence is irrelevant to whether [the arresting officer] had probable cause *at the time of arrest*."); Maltby v. Winston, 36 F.3d 548, 557 (7th Cir. 1994) ("Any evidence, therefore, that came to light after the arrest is not relevant to the probable cause inquiry."); Gramenos v. Jewel Cos., 797 F.2d 432, 439 (7th Cir. 1986) ("[I]t's what the police know, not whether they know the truth, that matters.").

### III. Probable Cause for Houseworth's Arrest of Row

The foregoing discussion relates solely to Holt's lack of probable cause. Houseworth presents a different issue. He could not recall whether he had heard of the feud between Row and the Bowlings/Simons prior to Row's arrest. Houseworth knew only "that there had been a battery and some alcohol involved" before he arrived at Row's house. This information came from Holt, who told Houseworth that she had "a signed battery affidavit from the victim." When Houseworth returned to Row's house after verifying Row's identification, Holt told Houseworth that "she had been pushed," and Houseworth observed Holt attempting to handcuff Row. It was only after seeing Row resist Holt's attempts that Houseworth stepped in and handcuffed Row.

9

An officer may, in good faith, rely on information communicated by another officer to establish probable cause. So long as sufficient knowledge to establish probable cause exists within the organization, the arrest is valid based on the collective information of the officers.  Kindred v. State, 524 N.E.2d 279, 292 (Ind. 1988); see also Moody v. State, 448 N.E.2d 660 (Ind. 1983) (officer acting in good faith reliance on police radio dispatcher had probable cause to conduct warrantless search of automobile).  Conversely, a warrantless arrest by an officer acting on unreliable information supplied by another officer is not based on probable cause and violates the Fourth Amendment.

Whether the arrest violates the Fourth Amendment is not, however, necessarily determinative of the arresting officer's civil liability for false arrest.  The Supreme Court of the United States, in Whiteley v. Warden, 401 U.S. 560 (1971), addressed an arrest by an officer who relied on communications from another officer to make the arrest.  Specifically, a Laramie, Wyoming policeman had arrested two men in response to a bulletin that stated that a warrant for their arrest had been issued in another part of the state.  Id. at 563-64.  It turned out that the warrant was invalid because it was issued on a conclusory complaint.  Id. at 565.  In concluding that the arrest was not lawful, the Court stated:

> We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin.  Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.  Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.

Id. at 568.  This has been understood to imply "that the arresting officer is himself not at fault and thus should not be held personally responsible in a civil action or disciplinary proceedings if it turns out that there was no probable cause at the source."  Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 3.3, at 208 (1984).  This is sometimes expressed as a good faith defense[6] or qualified immunity.[7]  Civil liability for common law false arrest is a matter of state

---

[6] See e.g., United States v. Hensley, 469 U.S. 221, 232-33 (1984) (where officers relied on a neighboring police department's "wanted flyer" to establish reasonable suspicion, "the officers making the stop may have a good-faith defense to any civil suit.  It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it." (dicta)).

law.  Governmental actors under some circumstances enjoy a qualified privilege for "discretionary acts." Cantrell v. Morris, 849 N.E.2d 488, 496 (Ind. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Kiddy-Brown v. Blagojevich, 408 F.3d 346, 352 (7th Cir. 2005)).  Whether law enforcement officers enjoy such a privilege against a false arrest claim after the Tort Claims Act is an issue not addressed by the parties and one we do not resolve today.  We think, however, that apart from the law of qualified privilege, it may also be the case that the arresting officer is not negligent.  Qualified privilege can be resolved as a matter of law on undisputed facts.  Unlike the qualified privilege, negligence is usually a question for the finder of fact, but it may in some cases be resolved as a matter of law. New York, C. & S. L. R. Co. v. Henderson, 237 Ind. 456, 480-81, 146 N.E.2d 531, 545 (Ind. 1957).  Houseworth testified that when he returned to the house Holt told him that Row had shoved her, and he found the two struggling.  Row did not contradict that testimony.   Houseworth, therefore, reasonably believed he had probable cause to arrest Row, and even if the trier of fact concludes that the arrest was not based on probable cause because Holt's claims were incorrect, Houseworth has no civil liability.  Accordingly, the trial court properly entered summary judgment in favor of Houseworth and the other County defendants.

## Conclusion

The trial court's grant of summary judgment in favor of the defendants is reversed as to Holt and the town of Osgood and affirmed as to the county defendants.  This cause is remanded to the trial court for further proceedings consistent with this opinion.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.

---

[7]See e.g., Rogers v. Powell, 120 F.3d 446, 455 (3d Cir. 1997) ("[Whitely, Hensley, and Capone v. Marinelli, 868 F.2d 102 (3d Cir. 1989)] teach us that the actions of a police officer acting in reliance on what proves to be flawed conclusions of a fellow police officer may be reasonable nonetheless and thus protected by the doctrine of qualified immunity."); Capone, 868 F.2d at 105-06 (relying on Whitely and Hensley and stating, "Given that the . . . bulletin expressly state[s] that a warrant existed for the arrest of Capone, as well as the nature of the alleged offenses . . . [the officer's] reliance upon the bulletin cannot be said to have been unreasonable.  Therefore, as a matter of law, the protection of qualified immunity from both § 1983 and state law tort claims extends to [the officer].").