**John M. BREWER and Susan B. Brewer, Appellants–Plaintiffs,**

v.

**INDIANA ALCOHOL AND TOBACCO COMMISSION, Appellee–Defendant.**

No. 49A02–1011–CT–1276.

Court of Appeals of Indiana.

Sept. 19, 2011.

Edward L. Murphy, Jr., William A. Ramsey, Charity A. Murphy, Murphy Ice & Koeneman LLP, Fort Wayne, IN, Attorneys for Appellants.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

John M. Brewer ("Brewer") and his wife, Susan B. Brewer,[1] appeal a negative jury verdict in their action against the Indiana Alcohol and Tobacco Commission ("ATC") for false arrest and excessive force allegedly used against Brewer during a routine inspection of their bar, The Wooden Nickel. The state excise officers who conducted the inspection claimed that Brewer was confrontational and profane and that he disrupted them in their duties. They arrested him for disorderly conduct and hindering law enforcement. Brewer later asserted that he was injured during the handcuffing and arrest process and also suffered emotional and economic damage as a result of the arrest.

When a jury found against him, Brewer filed this appeal, claiming that the trial court erred in admitting and excluding certain evidence; denying his motion for judgment on the evidence on the issues of probable cause and contributory negligence; and instructing the jury on contributory negligence. Finding no reversible error, we affirm.

### Facts and Procedural History

Brewer owns a bar called the Wooden Nickel in North Judson. At 10:40 p.m. on June 14, 2003, five excise officers entered the Wooden Nickel to conduct a routine inspection. The bar was crowded due to a local festival, and the excise police were present to check the identification of patrons who appeared to be underage. The officers' goals were to cause as little disruption as possible, perform routine checks, and then leave. While four of the officers checked IDs near the front entrance, Master Officer Kevin Akers walked through the bar and was confronted by Brewer, who demanded to know why the officers were there. As Brewer and Officer Akers approached the area near the front entrance, Officer Akers explained that the excise officers were there for a routine inspection. A routine inspection involves checking for underage and intoxicated patrons and ensuring that the estab-

---

1. Brewer's wife, Susan B. Brewer, was unsuccessful in her claim for loss of consortium. Because her claim is derivative and she was not involved in the events surrounding her husband's arrest, we refer to John Brewer in the narrative as "Brewer" and the appellants collectively as "Brewer."

lishment's cleanliness and recordkeeping are in compliance with state alcohol laws.

Brewer continued to demand answers from the officers while the officers were checking patron IDs. As patrons began to notice the exchange, Officer Akers escorted Brewer to the front door. Brewer pulled away, and some pushing ensued. Two other officers escorted him outside, and Brewer cursed and screamed profanities at the officers as they arrested him for hindering law enforcement and disorderly conduct. During the arrest process, he told the officers that he had an existing shoulder injury and that he could not withstand handcuffs, so the officers handcuffed him using a double-cuffing process, to give his shoulder more leeway. Brewer later asserted that his shoulder injury was exacerbated during the handcuffing and arrest process and that he also suffered emotional and economic damage as a result of the arrest.

On June 13, 2005, Brewer filed an action against the ATC, claiming false arrest, excessive force, and loss of consortium. A jury trial began on October 26, 2009, and the jury returned a verdict in favor of the ATC on all claims. Brewer now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

*I. Admissibility of Evidence*

■ Brewer first asserts that the trial court erred in admitting certain evidence and excluding other evidence. We apply an abuse of discretion standard when reviewing a trial court's decision to admit or exclude evidence. *Hatter v. Pierce Mfg., Inc.,* 934 N.E.2d 1160, 1173 (Ind.Ct.App. 2010), *trans. denied* (2011). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* Brewer challenges the trial court's ad-

mission of data from his psychological test, exclusion of the deposition testimony of his purported expert, and exclusion of evidence that he was never charged with a crime following his arrest.

*A. Admission of Psychological Test Data*

Brewer contends that the trial court erred in admitting raw data from a psychological test that he underwent during the course of the mental health treatment he received following the incident at The Wooden Nickel. To establish reversible error, Brewer must demonstrate not only that the trial court erroneously admitted the evidence, but also that such evidence was likely to have a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict. *Granger v. State,* 946 N.E.2d 1209, 1217 (Ind.Ct.App. 2011).

■ Here, Brewer challenges the trial court's admission of the ATC's Exhibit H containing raw data collected by clinical psychologist Daniel L. Schultz as part of an extensive psychological test he conducted on Brewer. Notably, the ATC's Exhibit G was admitted without objection. Exhibit G contains Dr. Schultz's summary of the results of Brewer's psychological test. Brewer contends that he was prejudiced by the admission of Exhibit H because the raw data was not intended to be analyzed by nonprofessional people such as jurors. However, the data formed the basis for Dr. Schultz's summary; thus, it was relevant in providing support for his findings. Moreover, Brewer did not object during closing argument when the ATC's counsel referenced some of Brewer's individual test responses contained in Exhibit H. As such, he has failed to preserve this error for appeal. See *Johnson v. State,* 928 N.E.2d 893, 899 (Ind.Ct.App.2010) (stating that failure to object to improper state-

ments made during closing argument results in waiver of issue for appeal).

## B. *Exclusion of Expert Testimony*

Brewer also claims that the trial court erred in excluding the deposition testimony of his purported expert. "No error in ... the exclusion of evidence ... is ground for ... vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice." Ind. Trial Rule 61. Thus, to obtain a reversal, Brewer must demonstrate that the exclusion of the testimony amounted to an abuse of discretion and that he was prejudiced thereby. *Dan Cristiani Excavating Co. v. Money*, 941 N.E.2d 1072, 1078–79 (Ind.Ct. App.2011), *trans. dismissed.*

Here, Brewer challenges the trial court's exclusion of the deposition testimony of his purported expert, former SWAT Commander Timothy Corbett. A review of the record shows that the trial court excluded both parties' purported experts, both for the same reason: their lack of specific experience as excise officers.[2] In his deposition, Commander Corbett testified regarding his extensive work as a SWAT team leader. He lacked specific experience as an excise officer, but had some experience working backup for the excise police in the late 1970s and early 1980s. It was upon this limited backup experience that he based his opinion that the excise officers could have prevented the incident with Brewer by taking control over the bar from the outset, i.e., turning up the lights, silencing the band, and cutting off the drink orders. Based on the foregoing, he stated that he did not believe that probable cause existed for Brewer's arrest.

We conclude that the trial court could have admitted Commander Corbett's testimony to explain general law enforcement principles pertaining to crowd control. Such general principles were relevant to the case and are not limited to a specific department within law enforcement. Any deficiencies stemming from the officer's lack of specific experience in the area of excise policing would go to the weight and not admissibility of his testimony. *See McIntosh v. Cummins*, 759 N.E.2d 1180, 1184 (Ind.Ct.App.2001) (stating that expert witness's competency may be determined by his knowledge of the subject generally and that any lack of knowledge on specific subject goes to the weight and not admissibility of his opinion).

■ Any error notwithstanding, we conclude that Brewer was not prejudiced by the exclusion of Commander Corbett's testimony. The thrust of Commander Corbett's explanations and conclusions regarding the excise officers' alleged deficiencies involves the officers' decision to keep the lights low, the music playing, and the drinks flowing during the course of their inspection. The record contains lengthy testimony from the various excise officers regarding the different protocols they regularly follow for a raid versus a routine inspection. Commander Corbett's opinion as to how the excise officers should have proceeded echoed the standard protocol for a raid, not a routine inspection. Here, the excise officers were conducting a routine inspection, for which their standard protocol is to cause as little disruption as possible while targeting patrons who appear to be underage or intoxicated, to make the required checks, and to leave. As such, we find no prejudice in the trial

---

**2.** Testimony from the ATC's expert, Lieutenant Mark French, was excluded pursuant to an order in limine.

court's exclusion of Commander Corbett's testimony.

### C. Exclusion of Evidence of No Criminal Charges

 Brewer also claims that the trial court abused its discretion in excluding evidence that he was released without being charged and has not since been charged with any crimes stemming from the incident at The Wooden Nickel. He predicates his claim on the premise that the prosecutor's subsequent decision not to formally charge him was tantamount to a lack of probable cause to arrest him in the first place. We disagree. The determination of probable cause depends not upon post-arrest events, but rather, on the facts and circumstances present "at the moment the arrest was made." *Row v. Holt,* 864 N.E.2d 1011, 1018 (Ind.2007) (*quoting Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).[3] The State's subsequent decision not to charge a suspect "is a post-arrest event that does not suggest anything about the reasonableness of the arrest." *Id.* Thus, we conclude that the excluded evidence concerning the State's subsequent decision not to charge Brewer was not probative of whether probable cause existed to arrest him and that, as such, the trial court acted within its discretion in excluding it.

### II. Probable Cause

██ In a related argument, Brewer asserts that the trial court erred in denying his motion for judgment on the evidence on the issue of probable cause. The

denial of a motion for judgment on the evidence lies within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. *Hartford Steam Boiler Inspection & Ins. Co. v. White,* 775 N.E.2d 1128, 1133 (Ind.Ct.App. 2002), *trans. denied* (2003). Because the purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence, we review the trial court's decision using the same standard that the trial court used in considering the motion in the first place. *Id.* In other words, we consider only the evidence and reasonable inferences most favorable to the non-moving party, and determine whether there was "no substantial evidence supporting an essential issue in the case." *Chi Yun Ho v. Frye,* 880 N.E.2d 1192, 1201 (Ind.2008).

 Indiana Trial Rule 50(A) provides in pertinent part,

Where all or some of the issues in a case tried before a jury ... are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict. A party may move for such judgment on the evidence.

Because Brewer raised a false arrest claim, he was required to demonstrate that the excise officers lacked probable cause to arrest him. *Row,* 864 N.E.2d at 1016. Brewer argues that the officers lacked probable cause as a matter of law, thus

**3.** To the extent Brewer argues that *Row* is distinguishable due to its involvement of a grand jury, we disagree, and note that whether the case involves a grand jury's ultimate decision not to indict a person or a prosecutor's ultimate decision not to charge a person by information, both decisions are made subsequent to arrest and thus are not probative of probable cause to arrest, as measured at

the time and place of the arrest. Also, to the extent Brewer dismisses as mere dicta our supreme court's discussion of this issue, we note that the discussion was included to emphasize what evidence may be considered in determining the existence of probable cause and included as support citations to numerous cases, including a case from the U.S. Supreme Court.

entitling him to a judgment on the evidence. However, in an action for false arrest, probable cause for arrest is normally an issue for the jury's determination. *Miller v. City of Anderson,* 777 N.E.2d 1100, 1104 (Ind.Ct.App.2002), *trans. denied* (2003). "Probable cause exists when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect had committed a criminal act." *Winebrenner v. State,* 790 N.E.2d 1037, 1040 (Ind.Ct. App.2003). The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis, and the facts and circumstances need not relate to the same crime with which the suspect is ultimately charged. *Id.*

Here, the excise officers arrested Brewer for disorderly conduct and for hindering enforcement of the alcohol laws. Indiana Code Section 35–45–1–3 states that disorderly conduct occurs when a person recklessly, knowingly, or intentionally engages in fighting or tumultuous conduct, makes unreasonable noise after a request to stop, or disrupts a lawful assembly. Indiana Code Section 7.1–5–8–1 states that "it is a Class C misdemeanor for a person to recklessly hinder, obstruct, interfere with, or prevent the observance or enforcement" of any provision, rule, or regulation codified under the alcohol and tobacco statutes. When he applied for his alcohol permit, Brewer consented "to the entrance, inspection, and search" of his licensed premises by the excise police, with or without a warrant, to determine his compliance with the alcohol statutes. Ind.Code § 7.1–3–1–6.

The evidence most favorable to the non-moving party, the ATC, indicates that when the excise officers entered Brewer's bar to conduct a routine inspection, Brewer exhibited a confrontational attitude toward the officers from the time he approached and questioned Officer Akers, to the time he approached the other officers in the midst of their identification checks, to the time he unleashed his verbal tirade on the way out of the building. As such, the excise officers had probable cause to believe that Brewer was acting in a disorderly manner that disrupted their inspection of the premises.

As previously discussed, the various excise officers were questioned concerning the ordinary procedures for excise police when conducting routine inspections versus full-scale raids, and the excise officers emphasized that in routine inspections such as the instant one, their goal is to create as little disruption as possible. To the extent Brewer cites the excise officers' failure to silence the music, turn up the lights, and order the bartenders to stop serving alcohol as evidence that the officers lacked probable cause to arrest him, we note that even assuming the officers acted in a procedurally deficient manner, such "failure to follow the usual procedure is not necessarily evidence of lack of probable cause." *Row,* 864 N.E.2d at 1018.

In sum, the evidence and inferences most favorable to the non-moving party do not support a finding that, as a matter of law, the excise police lacked probable cause to arrest Brewer. Consequently, the trial court acted within its discretion in denying Brewer's motion for a judgment on the evidence on the issue of probable cause.

### III. Contributory Negligence

Finally, Brewer challenges the trial court's treatment of the issue of contributory negligence, arguing (A) that the trial court erred in denying his motion for judgment on the evidence on the issue of contributory negligence; and (B) that the trial court erred in giving Final Jury Instruction Number 15.

## A. Judgment on the Evidence

Brewer claims that the trial court erred in denying his motion for judgment on the evidence on the issue of contributory negligence. "[C]ontributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise.... Contributory negligence is generally a question of fact for the jury." *Funston v. Sch. Town of Munster*, 849 N.E.2d 595, 598 (Ind.2006).

The evidence most favorable to the nonmoving party, the ATC, indicates that Brewer assumed a confrontational posture from the time he first noticed the officers' presence inside the Wooden Nickel. The persistent, loud, and agitated manner in which he addressed the officers escalated what was intended to be a low-key ID check into an adversarial situation requiring the officers to remove him from the sizable crowd inside the bar. His pugnacious attitude continued with a profanity-laced rant as the officers escorted him outside and attempted to subdue and handcuff him. Thus, we cannot say, as a matter of law, that Brewer was not contributorily negligent. As such, the trial court acted within its discretion in denying his motion for judgment on the evidence on the issue of contributory negligence.

## B. Jury Instruction

Finally, Brewer challenges the trial court's decision to give Final Instruction Number 15 on contributory negligence. We review a trial court's decision to give or refuse a tendered instruction for an abuse of discretion. *Joyner–Wentland v. Waggoner*, 890 N.E.2d 730, 733 (Ind.Ct.App.2008). In conducting our review, "we consider whether the instruction (1) correctly states the law, (2) is supported by

the evidence in the record, and (3) is covered in substance by other instructions." *Id.* at 734. Jury instructions must be considered not individually, but as a whole. *Lovings v. Cleary*, 799 N.E.2d 76, 79 (Ind. Ct.App.2003), *trans. denied* (2004).

Here, the trial court instructed the jury on contributory negligence as follows:

The Defendant, The Indiana Alcohol and Tobacco Commission, claims that Plaintiff John Brewer's own acts contributed to the injuries and harm that the Plaintiff John Brewer claims to have suffered, and that John Brewer's acts were one of the reasonable causes of his injuries.

The Defendant, The Indiana Alcohol and Tobacco Commission, has the burden of proving by the greater weight of the evidence that the Plaintiff John Brewer's acts contributed to the events leading to his arrest. If you decide that John Brewer's behavior was *one of the responsible causes* for his arrest, then John Brewer cannot recover damages, even if the Defendant, the Indiana Alcohol and Tobacco Commission, also contributed to the circumstances surrounding his arrest.

Appellant's App. at 46 (emphasis added).

Essentially, Brewer argues that Final Instruction Number 15 incorrectly stated the law because it did not specify that any negligence by Brewer must have been simultaneous with the fault of the excise police officers.[4] Brewer cites *Foster v. Owens*, 844 N.E.2d 216 (Ind.Ct.App.2006), *trans. denied*, as support for his argument. However, the *Foster* court used the phrases "simultaneous with the fault of the defendant" and "enter[ing] into the creation of the cause of action" as descriptive of the term "proximate cause." *Id.* at 221.

4. To the extent Brewer argues that the evidence in the record does not support the trial court's decision to give Final Instruction

Number 15, we disagree, based on our discussion in section III(A), *supra*.

Moreover, our supreme court noted in *Green v. Ford Motor Co.*, 942 N.E.2d 791, 795 n. 1 (Ind.2011), that the Indiana Model Civil Jury Instructions recommend using the term "responsible cause" as a plain English substitute for "proximate cause," thus providing better guidance for juries.

Here, the trial court followed the recommendation of the Model Instructions by including the term "responsible cause" in Instruction Number 15. The court further clarified the meaning of the term by giving Final Instruction Number 16, which states,

A person's conduct is legally responsible for causing and [sic] injury if:

1. the injury would not have occurred without the conduct, and

2. the injury was a natural, probable, and foreseeable result of the conduct. This is called a "responsible cause."

Appellant's App. at 47. We conclude that Instructions 15 and 16, taken together, adequately informed the jury that in order to find Brewer contributorily negligent, they must find that his conduct at the time of the incident, i.e., simultaneous conduct, was a proximate or responsible cause of his injury.

In sum, we conclude that Final Instruction Number 15 is a correct statement of the law. As such, the trial court acted within its discretion in giving the instruction to the jury. Accordingly, we affirm.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.