**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Mar 22 2012, 9:25 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN H. WATSON**
Sunman, Indiana

ATTORNEY FOR APPELLEE
SHERIFF KENNETH A. MURPHY**:**

**WAYNE E. UHL**
Stephenson Morow & Semler
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
TOWN OF BROOKVILLE, INDIANA:

**JAY D. PATTON**
Schroeder, Maundrell, Barbiere & Powers
Mason, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DONALD L. WEBB, III, | ) |
| | ) |
| Appellant-Plaintiff, | ) |
| | ) |
| vs. | )     No. 24A04-1104-CT-197 |
| | ) |
| SHERIFF KENNETH A. MURPHY AND | ) |
| TOWN OF BROOKVILLE, INDIANA | ) |
| | ) |
| Appellees-Defendants, | ) |
| | ) |
| TERRY MITCHUM, | ) |
| | ) |
| Appellee-Counterclaim Plaintiff. | ) |

APPEAL FROM THE FRANKLIN CIRCUIT COURT
The Honorable John D. Mitchell, Special Judge
Cause No. 24C01-0704-CT-153

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Donald L. Webb, III, appeals from the judgment entered in favor of the Franklin County Sheriff and the Town of Brookville (collectively "the Defendants") on his claims of battery and intentional infliction of emotional distress. He contends that the trial court committed fundamental error by admitting testimony and evidence of his prior aggressive acts and abused its discretion by exempting the Defendants' expert witness from a separation of witnesses order. Finding that the fundamental error doctrine does not apply and that the trial court did not abuse its discretion in exempting the Defendants' expert from the separation of witnesses order, we affirm.

## Facts and Procedural History

On July 22, 2006, Webb went to the Franklin County Fair on a small motor scooter. He was twenty-five years old at the time and mildly mentally handicapped, functioning at the level of a ten- to twelve-year-old child. His parents had left the home that evening to go to dinner at a nearby casino, and they directed Webb to stay home. He did not listen and instead went to the fair.

While at the fair, Webb was approached by several younger children approximately twelve to fifteen years old. They asked for money and Webb refused. One of the children got behind Webb and grabbed for his wallet. Webb turned around,

grabbed the child, and immediately released him. A woman, apparently the child's mother, saw the incident and called the police. Webb immediately left.

Brookville Police Department Officers Mitchum and Campbell located Webb driving down the road and turned on their lights and siren. Webb did not stop for several blocks. When he finally pulled over, Webb appeared agitated and said that he wanted to go home. He was directed to step to the front of the police car but instead walked back to his scooter as if he were going to leave. At that time, Officer Mitchum told Webb he was under arrest and attempted to pat him down for officer safety. Webb cursed and physically resisted. The officers cuffed Webb's hands behind his back and told him if he promised to calm down, they would cuff his hands in front of him rather than behind his back. Webb agreed, but when the officers removed one of the cuffs, Webb again tried to pull away.

Meanwhile, Franklin County Sheriff's Deputy Adam Henson arrived at the scene. Webb was re-cuffed, and Officer Mitchum and Deputy Henson attempted to place Webb in the back seat of the Brookville police car. Webb refused to sit down, so Deputy Henson pushed him into a seated position. Webb refused to put his legs into the car, struggling against the officers and kicking Officer Mitchum's knee. Deputy Henson retrieved his taser and warned Webb that he would use it if Webb did not stop kicking. Webb told Deputy Henson to go ahead and tase him.

Officer Mitchum continued to push Webb into the car and Webb bit him on the arm. In an attempt to get Webb to release his bite, Deputy Henson pushed the taser into Webb's shoulder and discharged it. Webb immediately released his bite but continued to

3

struggle and tried to bite Deputy Henson. In an effort to get Webb's legs into the car, Deputy Henson pressed the taser against the outside of Webb's right leg and discharged it again; Webb's struggles caused the taser to move around and strike him in multiple locations.

As a result of this incident, Webb sued the Defendants for battery and intentional infliction of emotional distress, and Officer Mitchum counterclaimed for assault and battery. Trial began on March 14, 2011. The trial court granted the Defendants pretrial motion that its expert witness, Samuel Faulkner, be excluded from any witness-separation order. The Defendants then moved for a separation of witnesses order, which was granted. Webb then also moved for and was granted the same exemption for his expert witness, Dr. John Ehrmann.

During trial, Webb's mother testified to her son's demeanor, saying that he responds to negative events by being upset, he laughs inappropriately when nervous, and he has temper tantrums. She also testified that she and her husband never had any trouble physically controlling Webb and never had to strike him. Tr. p. 107-08, 120-21. On cross-examination, she was asked about treatment records from Whitewater Valley Care Pavilion showing that Webb was previously evaluated for aggression, which she said she did not remember. Webb's counsel objected on the ground that the question was outside the scope of direct examination, and the objection was overruled. *Id.* at 121-22. The reports were not offered into evidence. On redirect, Webb's mother testified that Webb had never become physical with her but that he will match any force that is brought to him. *Id.* at 125-26.

4

Webb's father also testified to his son's demeanor and character, saying that he could become stubborn, stiff, and defiant and the best way to deal with Webb when he is mad is to talk to him calmly. *Id.* at 146-47. On cross-examination, he was asked without objection if Webb had ever become physical with him, and he responded that this had occurred only once. *Id.* at 149-50. He was also asked about the same treatment records from Whitewater Valley Care Pavilion, and he responded that he did not recall those records either. No objection was made to this line of questioning, and the reports were not introduced into evidence. *Id.* at 152-53.

Webb's expert witness, Dr. Ehrmann, testified about Webb's prior psychological and medical-treatment records. He also testified as to how the police officers, in his opinion, should have acted in order to de-escalate the situation with Webb. On cross-examination, Dr. Ehremann was asked about the report from Whitewater Valley Care Pavilion, and he testified that he reviewed it in reaching his opinion about Webb's condition. He was also asked, without objection, about statements in the report of Webb having trouble with his temper. The report was admitted into evidence without objection.

After five days of trial, the jury returned a judgment in favor of the Defendants on Webb's claims of battery and intentional infliction of emotional distress, and a judgment in favor of Officer Mitchum on his counterclaim for assault and battery. The jury awarded no damages on the counterclaim.

Webb now appeals.

## Discussion and Decision

Webb raises two issues on appeal: (1) whether the trial court committed fundamental error when it admitted testimony and evidence of his prior acts of aggression and (2) whether the trial court erred in allowing the Defendants' expert witness to remain in the courtroom although a separation of witnesses had been granted.

## I. Evidence of Prior Acts

Webb contends that the trial court erred in admitting testimony and evidence about his past aggressive conduct in violation of Indiana Evidence Rule 404(b), which states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith . . . ." However, because Webb did not object to the admission of this evidence at trial, he has waived the issue for appellate review. *See Kubsch v. State*, 784 N.E.2d 905, 923 (Ind. 2003) ("Failure to object at trial to the admission of evidence results in waiver of that issue on appeal."). Nevertheless, he claims the admission of this evidence constitutes fundamental error.

The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of the issue on appeal. *Jewell v. State*, 887 N.E.2d 939, 940 n.1 (Ind. 2008). The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Matthews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process.

6

*Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied.* This exception is available only in egregious circumstances. *Id.*

Fundamental error is not applicable in this case. We have applied this doctrine only to very limited situations in civil cases, including the termination of parental rights and mental-health commitment. *See S.M. v. Elkhart Cnty. Office of Family & Children*, 706 N.E.2d 596, 599 n.3 (Ind. Ct. App. 1999) (citing *In re L.B.*, 616 N.E.2d 406, 407 (Ind. Ct. App. 1993), *trans. denied*; *In re Commitment of Gerke*, 696 N.E.2d 416, 421 (Ind. Ct. App. 1998)). Since this case involves neither liberty interests nor parental rights, we decline to extend the fundamental error doctrine to this type of civil case in which there are only monetary interests at stake.

Even if fundamental error were to apply to this case, we find that the admission of Webb's past aggressive conduct does not rise to the level of fundamental error. Evidence that is otherwise inadmissible under Evidence Rule 404(b) may become admissible "when the defendant 'opens the door' to questioning on that evidence." *Jackson v. State*, 728 N.E.2d 147, 152 (Ind. 2000). Webb's counsel opened the door to this evidence by questioning Webb's parents about his demeanor and tendencies and by using his expert witness to testify to Webb's lack of violent history and the best way to approach Webb in a confrontational situation. It was therefore not fundamental error for the Defendants to cross-examine Webb's parents and expert witness about Webb's demeanor and tendencies and to offer evidence to rebut those claims. Once the door is opened to this line of questioning, it is not fundamental error for opposing counsel to take advantage of the opportunity.

7

The trial court did not commit fundamental error when it admitted testimony and evidence of Webb's prior acts of aggression.

## II. Separation of Witnesses

Webb also contends that the trial court erred in allowing the Defendants' expert witness, Faulkner, to remain in the courtroom although a separation of witnesses had been granted. Separation of witnesses is governed by Indiana Evidence Rule 615, which says:

> At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion. This rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

Webb argues that the Defendants did not show that Faulkner fit into any of the enumerated exceptions in Evidence Rule 615 so it was an abuse of discretion for the trial court to exempt Faulkner from the separation of witnesses order. We disagree.

A witness whose presence in the courtroom is essential to a party's case cannot be excluded. This exemption is generally used for expert witnesses who are believed to be less susceptible to shaping their testimony based on what they hear from other witnesses in the courtroom. *R.R. Donnelley & Sons Co. v. N. Tx. Steel Co., Inc.*, 752 N.E.2d 112, 134 (Ind. Ct. App. 2001), *trans. denied*. Additionally, Indiana Evidence Rule 703 specifically contemplates the fact that expert witnesses may be in the courtroom for other witnesses' testimony, stating "[t]he facts or data in the particular case upon which an

8

expert bases an opinion or inference may be those perceived by or made known to the expert *at or before the hearing*." (Emphasis added).

Whether a witness falls within the exemption is within the trial court's discretion. *R.R. Donnelley & Sons Co.*, 752 N.E.2d at 134; *see also Fourthman v. State*, 658 N.E.2d 88, 90 (Ind. Ct. App. 1995), *trans. denied*. We will only reverse a trial court's decision if it is an abuse of discretion – if it is clearly against the logic and effects of the facts and circumstances before it or the reasonable, probable, and actual deductions to be drawn therefrom. *Brewer v. Ind. Alcohol and Tobacco Comm'n*, 954 N.E.2d 1023, 1026 (Ind. Ct. App. 2011).

In this case, the Defendants argued that Faulkner had a specialized expertise in law enforcement and the use of force and was going to be asked questions based on the testimony he heard in the courtroom regarding the incident with the police and Webb. Tr. p. 56. Because he was going to be asked his opinion on the testimony presented in court, if Faulkner were not allowed to stay in the courtroom, then he would have to be provided with daily transcripts so that he could appropriately form his expert opinion in this case. Given the necessity that he be aware of each witness's testimony and the belief that expert witnesses are less likely to alter their testimony based on what they hear from other witnesses, we hold that the trial court did not abuse its discretion in exempting Faulkner from the separation of witness order. We therefore affirm the trial court.

Affirmed.

ROBB, C.J., and NAJAM, J., concur.