## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2016, 9:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Keith E. Hopkins, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 29, 2016

Court of Appeals Case No.
02A03-1607-CR-1588

Appeal from the Allen Superior Court

The Honorable Wendy W. Davis, Judge

Trial Court Cause No.
02D05-1511-F6-1125

**Baker, Judge.**

[1] Keith Hopkins appeals his convictions for two counts of Class A Misdemeanor Resisting Law Enforcement.[1] Hopkins argues that police officers effected an unconstitutional warrantless arrest and that there is insufficient evidence supporting the convictions. Finding no constitutional violation and sufficient evidence, we affirm.

## Facts

[2] On November 14, 2015, sometime after 2:30 a.m., the Fort Wayne Police Department received a hang-up 911 call. Officer Lucas McDonald responded to the residence where the call originated. He knocked on the door of the home, later identified as the home of Hopkins's parents, and a man, later identified as Hopkins, answered the door. Officer McDonald asked Hopkins if everything was okay and Hopkins said everything was fine. Officer McDonald then

> noticed that there was a woman, didn't know who she was, didn't know who he was either at the time. . . . She was obviously very upset, crying, just looked like she had been really upset maybe and so I asked her what her name was, and [Hopkins] interrupted and spoke for her and said she doesn't have to give that to you . . . .

Tr. Vol. I p. 232-33. Additionally, the officer noticed another man sitting on a couch inside the house. Officer McDonald observed the following of Hopkins:

---

[1] Ind. Code § 35-44.1-3-1

> He looked very angry. His body was tense. He had a small kind of like wound with blood freshly trickling out on his arm, very short, very stern voice, aggressive, argumentative, uncooperative, very uncooperative.

*Id.* at 233. Hopkins closed the door on the officer's arm and the officer returned to his vehicle.

[3] Feeling concerned about the situation, Officer McDonald ran a check on Hopkins and learned that there were mutual protective orders in place between Hopkins and Leah Hutchinson. As Officer McDonald did not have a picture of Hutchinson, he was unable to determine whether the upset woman inside the house was her. At Officer McDonald's request, Officer Jhormy Martinez went to Hutchinson's home to talk with her. Hutchinson, who was crying and had a fearful demeanor, reported to Officer Martinez that Hopkins had just choked and assaulted her in front of their child and that she had stabbed him to make him stop. She had bruising on her face, red marks around her neck, and red abrasions on her chest area. Officer Martinez related to Officer McDonald that there was probable cause for charges against Hopkins.

[4] In the meantime, Officer McDonald had also learned that Hopkins was on parole for possession of a firearm by a serious violent felon. Officer Tim Hughes arrived to the scene and the two officers formulated a plan about how to engage Hopkins in a safe manner. The officers were concerned about the safety of the other people inside the residence, the fact that there may have been a gun inside the home, and the possibility that Hopkins could barricade himself

inside the home. Officer Hughes approached the house and Hopkins opened the door; Officer Hughes tried to encourage Hopkins to come out and speak with the officers, but he refused. The officer also asked if Hopkins could send out the other family members present in the house; Hopkins reported that they did not want to leave.

[5] Finally, after other efforts had failed, the officers decided to employ a taser so that they could effect a peaceful arrest. Hopkins was told that he was going to be arrested and was then tased, but the taser deployed ineffectively and Hopkins was able to flee. He ran through the house and out the back door, and the officers pursued him on foot for over two blocks. When the officers finally reached him, Hopkins began to comply by walking over to them. One officer approached Hopkins and grabbed his right arm, but Hopkins was tensing and turning away, requiring the officer to keep pulling on the arm to get it behind Hopkins's back so that handcuffs could be applied. It required the efforts of three officers to get Hopkins handcuffed. Hopkins began shifting his weight and evading the handcuffs; finally, one of the officers administered two bursts of mace to Hopkins's face and they were able to handcuff his hands behind his back.

[6] On November 18, 2015, the State charged Hopkins with Level 6 felony battery, Level 6 felony strangulation, Class A misdemeanor interference with the reporting of a crime, and two counts of Class A misdemeanor resisting law enforcement. Hopkins's jury trial took place on May 25 and 26, 2016, after which the jury found him guilty of two counts of resisting law enforcement and

not guilty of the remaining charges. On June 13, 2016, the trial court sentenced Hopkins to one year for the first count and six months for the second count, to be served consecutively. Hopkins now appeals.

# Discussion and Decision

## I. Probable Cause

Hopkins first argues that law enforcement did not have probable cause to arrest him without a warrant. Initially, we note that Hopkins did not file a motion to suppress prior to trial or object in any way on this basis during trial. As a result, he has unquestionably waived this argument. *E.g.*, *Butler v. State*, 724 N.E.2d 600, 604 (Ind. 2000).[2]

Waiver notwithstanding, we note that Indiana Code section 35-33-1-1(a)(5) explicitly authorizes a law enforcement officer to effect a warrantless arrest of an individual if the officer has probable cause to believe that the person has committed battery resulting in bodily injury or domestic battery. *See also* I.C. § 35-33-1-1(a)(2) (authorizing warrantless arrest of individual whom law enforcement has probable cause to believe has committed a felony). In this case, Hutchinson told Officer Martinez that Hopkins had choked and assaulted her in front of their child, and the officer observed bruising on her face, red

---

[2] The State explicitly instructed the officers who testified *not* to refer to the fact that Hopkins was on parole for possession of a firearm by a serious violent felon. Had Hopkins raised a probable cause argument, this fact would have come to light for the jury (Hopkins contends that the jury should have decided the issue). It is manifestly unfair for him to have had the benefit of the jury's ignorance of this prejudicial fact and then raise this argument for the first time on appeal.

marks around her neck, and red abrasions on her chest. Hutchinson also reported that she had stabbed Hopkins to get him off of her. Officer McDonald had observed Hopkins to be angry, tense, aggressive, and to have a small wound on his arm that was bleeding. These facts certainly constitute probable cause to believe that Hopkins had committed battery resulting in bodily injury and/or domestic battery. Consequently, law enforcement was statutorily authorized to effect a warrantless arrest.

[9] Probable cause for the purpose of the above statute likewise constitutes probable cause for the purpose of the Fourth Amendment to the United States Constitution. Hopkins argues that, in addition to probable cause, law enforcement was required to identify exigent circumstances to effect the warrantless arrest. *Sapen v. Indiana*, 869 N.E.2d 1273, 1276-77 (Ind. Ct. App. 2007) (holding that, for Fourth Amendment purposes, the warrantless arrest of a person in his home[3] requires both probable cause and exigent circumstances making it impracticable to obtain a warrant first). The record here reveals the following:

- When Officer McDonald first responded, he observed an angry, tense, aggressive Hopkins, who had a bleeding wound on his arm. The officer also saw a woman inside who was upset and crying and another man sitting on a couch.

---

[3] We note that here, Hopkins was eventually arrested blocks away from his home. But even if he had been in his home when arrested, his argument is unavailing.

- Officer McDonald then learned that Hopkins and Hutchinson had mutual protective orders and that Hopkins was on parole for possession of a firearm by a serious violent felon.
- Officer Martinez spoke to Hutchinson, who stated that Hopkins had assaulted her and had the physical wounds to corroborate her statements.

From all of these facts, the officers had several reasonable concerns: (1) Hopkins may have had one or more firearms in his house; (2) the other people in the house, including the woman who was visibly upset, may have been in danger; and (3) there was a very real chance that Hopkins would barricade himself inside the house with other people inside of it. We find that these facts constitute exigent circumstances such that the warrantless arrest of Hopkins was not unconstitutional.[4] We find no error in the admission of evidence stemming from the warrantless arrest of Hopkins.

## II. Sufficiency

[10] Next, Hopkins argues that there is insufficient evidence supporting his two convictions for Class A misdemeanor resisting law enforcement. When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm if, based on the evidence and inferences, a

---

[4] Hopkins does not articulate separate arguments under both the Indiana and United States Constitutions, and we will not do so on his behalf. We note, however, that he would be unsuccessful under either constitution in any event.

reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

## A. Resisting By Flight

To convict Hopkins of resisting law enforcement by flight, the State was required to prove beyond a reasonable doubt that he fled from a law enforcement officer after the officer had, by visible or audible means, identified himself and ordered Hopkins to stop. I.C. § 35-44-3-3(a)(3). Hopkins concedes all of these elements. He merely argues that the police did not have probable cause to believe that he had committed an offense and, thus, to arrest and order him to stop. Specifically, he argues that the record does not reveal what specific statements Officer Martinez made to Officer McDonald about what Hutchinson had said.

We disagree. An officer may, in good faith, rely on information communicated by another officer to establish probable cause. *Row v. Holt*, 864 N.E.2d 1011, 1019 (Ind. 2007). And so long as sufficient knowledge to establish probable cause exists within the organization, the arrest is valid based on the collective information of the officers. *Id.* As noted above, Hutchinson told Officer Martinez that Hopkins had assaulted her, and the officer observed bruising to her face, red marks around her neck, and abrasions to her chest. Officer Martinez testified that he reported back to Officer McDonald that there was probable cause for the arrest. This evidence suffices to establish that law enforcement at the scene had probable cause to arrest Hopkins and, obviously,

to order him to stop when he fled. We find the evidence sufficient to support this conviction.

## B. Resisting By Force

[13] To convict Hopkins of resisting law enforcement by force, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer who was lawfully engaged in the execution of the officer's duties. I.C. § 35-44.1-3-1(a)(1). One forcibly resists when "strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Glenn v. State*, 999 N.E.2d 859, 861 (Ind. Ct. App. 2013). Specifically, our Supreme Court has held that a defendant forcibly resisted when he pushed away with his shoulders while cursing and yelling and then "stiffens up." *Graham v. State*, 903 N.E.2d 963, 965 (Ind. 2009).

[14] One officer testified that he tried to gain control of Hopkins's arm but that Hopkins would not "let us gain control of it. He was tensing, turning away from me. I had to keep pulling on it to get it behind him . . . ." Tr. Vol. II p. 32. Hopkins eventually ended up on the ground on his stomach and began to struggle, "shifting his body, shifting his weight. To me, it appeared that he was trying to get out from underneath me to flee again or to escape . . . ." *Id.* at 55. All told, it took three police officers and two bursts of mace to Hopkins's face to get him sufficiently subdued to place handcuffs on his wrists. We find that a reasonable factfinder could have found Hopkins guilty of resisting law

enforcement by force based upon this evidence. In other words, the evidence is sufficient.

[15] The judgment of the trial court is affirmed.

May, J., and Pyle, J., concur.