# FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID A. SMITH**
McIntyre & Smith
Bedford, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KYLE HUNTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD M. TALLMAN, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 51A01-1305-PL-241 |
| | ) | |
| STATE OF INDIANA, INDIANA | ) | |
| DEPARTMENT OF NATURAL RESOURCES, | ) | |
| and ANTHONY MANN, Individually and in | ) | |
| his Capacity as a Conservation Officer Employed | ) | |
| by the Indiana Department of Natural Resources, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARTIN CIRCUIT COURT
The Honorable Mark R. McConnell, Special Judge
Cause No. 51C01-0810-PL-428

**May 27, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Richard Tallman appeals the trial court's entry of summary judgment in favor of the State of Indiana, Indiana Department of Natural Resources, and DNR Officer Anthony Mann (collectively "DNR") on Tallman's complaint alleging that Officer Mann negligently injured Tallman when he arrested him. Tallman presents a single issue for our review, namely, whether the trial court erred when it concluded that DNR is immune from liability for Tallman's alleged injuries as a matter of law.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

In December 2004, Jerry Tredway hired Tallman to harvest timber on Tredway's property in Martin County. Tredway and Tallman entered into a written contract which provided as follows:

> This is a sales agreement between Richard M. Tallman (Buyer) and Jerry Tredway (Seller). This contract is for approximately 110 marked trees for a total sum of $ [sic] 1/2 of proceeds. The above trees are to be cut and removed by Buyer. The Seller assumes no responsibility for persons or property involved in the removal of the timber from his property. Buyer will remove timber at the direction of the Seller and use reasonable care in the removal of all logs. Timber will be sold and 1/2 of all proceeds will go to Seller. A $4000.00 guaranteed payment will be made on 12-13-04. One year will be allowed to remove timber and any amount exceeding gross sales of $8000.00 will be divided equally between Seller and Buyer.

Appellant's App. at 132.

After Tallman had begun harvesting the timber, he discovered that the quality of

---

[1] We heard oral argument in this case on May 1, 2014, at Salem High School.

the timber was not what he had anticipated, and he was not able to sell the timber for the price he had expected to get for it. Accordingly, Tallman asked Jan Tredway, Tredway's daughter, for permission to cut forty-five additional trees from the property.[2] And in August 2005, Tallman delivered to Tredway's wife a check for $535 under the terms of the original contract. Along with the check, Tallman provided a list of twenty-three additional trees he had harvested to support the amount of the proceeds.

Jan was not satisfied with the $535 check. After she inspected the property, Jan contacted DNR to report that "Tallman had cut more trees than the contract allowed and they had not been paid for the additional trees." Id. at 110. DNR Conservation Officer Tony Mann met with Jan to discuss the matter. Jan told Officer Mann that she was considering filing a civil complaint against Tallman. But Officer Mann told her to "[k]eep [her] mouth shut, stick with the State, trust the judicial system and everything will be okay." Id. at 150.

Over the course of the following year, DNR conducted an investigation, including interviews with the parties and inspections of Tredway's property and Tallman's business records. And on June 22, 2006, Duane McCoy, a Timber Buying Licensing Forester for DNR, executed an affidavit stating as follows:

> This is to certify that on October 28, 2005, I, Duane McCoy, Timber Buying Licensing Forester, have examined the trees that were cut on the Jerry and Marie Tredway property in Martin County, Indiana. I further certify that I found 2 American Beech, 3 Black Cherry, 1 Maple, 25 Sycamore, 24 White Ash, 13 White Oak and 50 Yellow Poplar for a total of

---

[2] Jan denies having given Tallman permission to harvest additional trees.

180 trees that were cut on the property. 11 trees did not have an estimate of volume made because they were cut and left in the woods or did not have enough information. However, the other 169 trees totaled an estimated 50,895 board feet of volume. Conservation Officers Mann and Wolsiefer . . . accompanied me on the visit to the property.

Id. at 121. Meanwhile, Tallman told DNR investigators that he had harvested 155 trees and had only sold 25,794 board feet for a total price of $8,377.75.

On October 19, 2006, Officer Mann submitted to the trial court a probable cause affidavit alleging that Tallman had committed the crimes of "theft, cutting timber not purchased, [and] failure to pay as agreed" in violation of Indiana Code Sections 35-43-4-2, 25-36.5-1-4(b), and 25-36.5-1-4(a). Id. at 108. Also submitted with the affidavit was a ten-page report prepared by DNR Sergeant Kim Wolsiefer detailing the investigation of Jan's allegation that Tallman had cut more timber than had been authorized by the parties' contract. That report included affidavits prepared by DNR Timber Buyer Licensing Foresters Gary Gretter and McCoy.

The trial court issued an arrest warrant, which Officer Mann served on Tallman on November 8. Officer Mann placed Tallman in handcuffs and escorted him to the Martin County Jail. On the way, Tallman complained to Officer Mann that the handcuffs were too tight, but Officer Mann told Tallman that he could not stop to loosen the handcuffs. When they arrived at the jail, Tallman reported pain and numbness in his hands. Officer Mann removed the handcuffs. Tallman continued to complain of pain and numbness in his hands, and then he reported having pain in his arms and chest. An ambulance was called, and EMTs treated Tallman for his symptoms in the ambulance at the jail. Soon

4

thereafter, Tallman posted bond and was released from custody. In the ensuing months, Tallman sought medical treatment for continuing pain and numbness in his wrists.

On October 29, 2008, Tallman filed a complaint against DNR alleging its negligence in causing his injuries. And on March 6, 2009, the State moved to dismiss all criminal charges against Tallman, which the trial court granted. On April 5, 2012, DNR moved for summary judgment on Tallman's civil complaint. In particular, DNR argued that it was entitled to judgment in its favor on the basis of governmental immunity. Following a hearing, the trial court entered summary judgment in favor of DNR. This appeal ensued.

## DISCUSSION AND DECISION

Our standard of review for summary judgment appeals is well established:

When reviewing a grant [or denial] of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous.

5

Knoebel v. Clark County Superior Court No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. Crum v. City of Terre Haute ex rel. Dep't of Redev., 812 N.E.2d 164, 166 (Ind. Ct. App. 2004).

> Indiana Code Section 34-13-3-3 provides:
>
> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce . . . a law (including rules and regulations) . . . unless the act of enforcement constitutes false arrest or false imprisonment.

Whether an immunity applies is a matter of law for the courts to decide. Gary Comm. Sch. Corp. v. Roach-Walker, 917 N.E.2d 1224, 1226 (Ind. 2009). The party seeking immunity bears the burden of establishing the immunity. Id.

In support of its summary judgment motion, DNR designated evidence showing that it is immune from liability for Tallman's alleged injuries as a matter of law. On appeal, Tallman contends[3] that summary judgment is prohibited because there exist genuine issues of material fact whether Mann "acted in good faith in obtaining a warrant for Tallman's arrest and whether he should have reasonably known that he lacked probable cause to request the warrant for Tallman's arrest." Id. at 10. In short, Tallman maintains that DNR is not immune because his arrest constitutes a false arrest or false imprisonment.

Our supreme court has observed that where a claim for false imprisonment stems

---

[3] Tallman does not dispute that Officer Mann was acting within the scope of his employment with DNR at the time of his arrest.

from an alleged false arrest, "we need not make a separate analysis for the former." Row v. Holt, 864 N.E.2d 1011, 1016 (Ind. 2007). And in Conwell v. Beatty, 667 N.E.2d 768, 775 (Ind. Ct. App. 1996), this court explained that

> "proof of the absence of probable cause is essential to the plaintiff's cause of action for false arrest. . . . Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which would warrant a person of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. Thus, if the plaintiff in a false arrest action fails to demonstrate the absence of probable cause, or if the record as a whole reflects probable cause for the arrest, then the plaintiff's case must fail and the inquiry comes to a halt."

(Quoting Garrett v. City of Bloomington, 478 N.E.2d 89, 93 (Ind. Ct. App. 1985), trans. denied). The probable cause determination turns on whether a reasonable person, under the facts and circumstances encountered by the arresting officer, would believe that the suspect had committed or was committing a criminal offense. Row, 864 N.E.2d at 1017. "This standard is an objective one and '[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'" Id. (quoting Whren v. United States, 517 U.S. 806, 813 (1996)).

Indiana Code Section 35-43-4-2 provides that a person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony. And Indiana Code Section 25-36.5-1-4 provides in relevant part that it is unlawful (a) for any timber buyer to fail to pay, as agreed, for any timber purchased; and (b) for any timber buyer to cut or cause to be cut or appropriate any timber not purchased.

7

Here, the designated evidence is undisputed that Tallman cut down 169 trees on Tredway's property. Tallman contends that, while the written contract authorized him to cut down 110 trees, he subsequently got permission from Jan to cut down an additional forty-five trees for a total of 155 trees. Thus, even assuming that Tallman got Jan's permission for the additional trees, which she denies, the undisputed designated evidence shows that Tallman harvested at least eleven trees without permission. Further, when Tallman paid the Tredways an additional $535 based on the oral contract, he included a list of twenty-three trees he had cut to support the amount of the check. Tallman has not explained the discrepancy between the twenty-three additional trees, which would have totaled 133 trees cut, and the 155 trees his own records show that he cut. Finally, while Officer Mann testified that at least 50,000 board feet of timber had been cut from the property, Tallman reported that he had harvested only 25,794 board feet of timber. The difference in value between the two measurements of board feet harvested is approximately $8,150. Id. at 118.

Still, Tallman maintains that "the court should hold that [DNR is] entitled to immunity under Section 34-13-3-3(8) if and only if a factfinder determines that Mann's enforcement of law—i.e., his institution of criminal charges and his arrest of Tallman—was carried out in good faith." Appellant's Brief at 14. And Tallman claims that Officer Mann demonstrated bad faith in the following ways: discouraging Jan from pursuing a civil suit against Tallman; telling Jan that if she cooperated with his investigation she would obtain a money settlement faster; and choosing not to "seek legal guidance from

8

his superiors at DNR in Indianapolis" despite his knowledge that the dispute arose over a written contract. Id.

In support of his contention that we should apply a good faith standard to Officer Mann's conduct, Tallman cites to case law pertaining to mistaken identity and malicious prosecution. See Delk v. Board of Commissioners of Delaware County, 503 N.E.2d 436 (Ind. Ct. App. 1987), and Barnes v. Wilson, 450 N.E.2d 1030 (Ind. Ct. App. 1983). But those cases are inapposite here, where there is no issue of mistaken identity, and Tallman does not allege malicious prosecution. We decline to extend the holdings in Delk and Barnes to the facts of this case.

Tallman also argues that the trial court's determination of probable cause is not conclusive and cites to United States v. Leon, 468 U.S. 897, 914 (1984), for the proposition that "[d]eference to the magistrate . . . is not boundless." As the United States Supreme Court stated in Leon, in reference to search warrants, "the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." Id. But here, the undisputed designated evidence does not support Tallman's claim that the probable cause affidavit was knowingly or recklessly untruthful. While there is evidence that Officer Mann discouraged Jan from pursuing a civil action against Tallman, the DNR investigation and ten-page report submitted with the probable cause affidavit support an objectively reasonable belief that Tallman had committed theft. See Conwell, 667 N.E.2d at 775. Officer Mann's zeal in prosecuting Tallman does not mitigate against a

9

finding of probable cause. See id.

Finally, Tallman also claims that, while he did not file a claim against DNR under 42 U.S.C. § 1983, case law regarding such claims should apply here. Tallman cites to Malley v. Briggs, 475 U.S. 335 (1986), a case involving a § 1983 claim, as support for using an objective test to look past a warrant to determine whether a police officer's conduct is objectively reasonable. In particular, at common law, "the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause." Id. at 340-41. Tallman complains that "the implications of [DNR]'s position are clear: to follow [DNR]'s lead is to hold, in essence, that a police officer can create his own ITCA immunity by procuring an arrest warrant." Appellant's Brief at 17.

We cannot agree with Tallman's assertion on this point. Again, an arrest warrant must be supported by probable cause, and a probable cause determination turns on whether a reasonable person, under the facts and circumstances encountered by the arresting officer, would believe that the suspect had committed or was committing a criminal offense. Row, 864 N.E.2d at 1017. Further, in Malley, the United States Supreme Court held: "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." 475 U.S. at 344-45 (citation omitted). The issuance of an arrest warrant does not in itself conclusively establish immunity because, when the warrant is challenged, we will look behind it to assess the probable cause determination. Here,

10

again, the probable cause affidavit and supporting documentation of the alleged theft are sufficient, and there is no basis to deny immunity. Further, Officer Mann did not act alone in procuring the arrest warrant. DNR undertook a thorough, months-long investigation of Tallman and considered evidence gathered and opinions given by several sources before seeking an arrest warrant. We hold that DNR is immune from liability for Tallman's alleged injuries. The trial court did not err when it entered summary judgment in favor of DNR.

Affirmed.

VAIDIK, C.J., and MAY, J., concur.