

**FILED**

Sep 26 2017, 5:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Laura B. Conway
Mark W. Rutherford
Thrasher Buschmann & Voelkel, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE,
STATE OF INDIANA

Curtis T. Hill
Attorney General of Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE,
HOOSIER PARK, ET AL

Scott E. Andres
Charles J. Maiers
Due Doyle Fanning & Alderfer,
LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas P. Donovan, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Hoosier Park, LLC d/b/a Hoosier Park, Racing & Casino, Centaur, Inc., Hoosier Park, L.P., Centaur Holdings, LLC, and Terrance Sollars, Jeremy Hosier, in his capacity as an employee of the Indiana Gaming | September 26, 2017 <br><br> Court of Appeals Case No. 48A02-1608-PL-1704 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Angela Sims, Judge <br><br> Trial Court Cause No. 48C01-1212-PL-204 |

Commission, Zach Wilkinson, in his capacity as an employee of the Indiana Gaming Commission, and Indiana Gaming Commission,

*Appellees-Defendants*

**May, Judge.**

[1] Thomas P. Donovan appeals the trial court's entry of summary judgment in favor of Hoosier Park, LLC d/b/a Hoosier Park, Racing & Casino, Centaur, Inc., Hoosier Park, L.P. and Centaur Holdings, LLC ("Hoosier Park"), and Terrance Sollars (collectively, "Hoosier Park Appellees"); Jeremy Hosier, in his capacity as an employee of the Indiana Gaming Commission, Zach Wilkinson, in his capacity as an employee of the Indiana Gaming Commission, and the Indiana Gaming Commission ("IGC") (collectively, "IGC Appellees") on his allegations of (1) false imprisonment, (2) wrongful arrest, (3) malicious prosecution, (4) abuse of process, and (5) battery. We affirm.

# Facts and Procedural History

Since 1999, Donovan has been making money at casinos by gambling as an "advantage player." (Appellant's App. Vol. III at 13.)[1] According to Donovan, "an advantage player plays games at casinos . . . by counting cards in blackjack or playing video poker games that are a near a [sic] 100 percent return." (*Id*.) In this time, Donovan has also been banned from a number casinos.[2]

On July 19, 2011, Hoosier Park sent Donovan a letter ("the July 19 letter") via certified mail informing him he was banned from Hoosier Park Racing & Casino, located in Anderson, Indiana, and its "Off-Track Betting facilities located in Indianapolis, Ft. Wayne, and Merrillville, Indiana (Premises)." (Appellant's App. Vol. II at 35.) Hoosier Park mailed the July 19 letter to Donovan's address on file, however the address on the letter and envelope contained a typo, addressing it to "Thomas T. Donovan," (*id*.), rather than Thomas P. Donovan. The July 19 letter notified Donovan he "may not return at any time to the Premises during the period of [his] ejection[,]" (*id*.), and would be "considered a trespasser and subject to arrest" if he returned during that time. (*Id*.) Hoosier Park indicated the earliest Donovan would be eligible to apply for readmission was July 19, 2013, under the following conditions:

---

[1] Donovan initially appealed this matter in Court of Appeals Cause No. 48A04-1512-PL-02282, but we remanded the Cause to the trial court for further proceedings. The appendices from that prior appeal are in the record before us, and we refer to them herein as "Prior Cause App."

[2] Donovan testified to being evicted from Grand Victoria Casino & Resort in Rising Sun, Indiana, Belterra Casino Resort in Florence, Indiana, Blue Chip Casino in Michigan City, Indiana, and Hollywood Casino in Tunica, Mississippi. (*See* Appellant's App. Vol. III at 14-19.) One instance of his being banned was the subject of our Indiana Supreme Court's decision, *Donovan v. Grand Victoria Casino & Resort, L.P.*, 934 N.E.2d 1111 (Ind. 2010).

> (a) You are not a threat to the safety of Hoosier Park Racing &
>     Casino customers, yourself, employees and agents of Hoosier
>     Park Racing & Casino, the Indiana Gaming Commission and
>     the Indiana Horse Racing Commission;
> (b) You will gamble responsibly;
> (c) You will not abuse drugs or alcohol while on the Premises;
> (d) You will not cheat at a gambling game;
> (e) You will not behave in a disruptive manner;
> (f) You will not steal;
> (g) You are not indebted to Hoosier Park Racing.

(*Id.*) The last sentence of the July 19 letter indicated Hoosier Park "regret[ted] the necessity to ban [Donovan] from the Premises, but believed such an action to be necessary and in the best interests of Hoosier Park Racing & Casino and its patrons." (*Id.*) Donovan received the July 19 letter on July 21, 2011, and signed the certified mail receipt.

[4] Donovan returned to Hoosier Park on July 22, 2011 and July 29, 2011. His presence went unnoticed both times by Hoosier Park's security team because he gambled using a "Player's Club" card[3] belonging to two other patrons, Jennifer Harker and Donald Harker, who were acquaintances of Donovan. After these two occasions, Hoosier Park's security team realized Donovan had been visiting Hoosier Park and was using the Harkers' Player's Club card to conceal his identity. Thus, the security team set an alert to trigger an alarm if the Harkers' Player's Club card was used again at the Casino.

---

[3] Player's Club cards are essentially rewards cards that track its user's visits and offer perks when the user returns to the casino. (Appellant's App. Vol. III at 24.)

[5] On August 5, 2011, Donovan returned to Hoosier Park and used the Harkers' Player's Club card at a slot machine. His use of the card triggered the security alert, and the security team closely examined surveillance footage to confirm Donovan was indeed the person at the slot machine. Security called the IGC Squad Office on site, and informed IGC Agent Zach Wilkinson that Donovan, an "evicted patron," (*id.* at 98), was on the property and was currently playing at a slot machine. Agent Wilkinson alerted IGC Agent Jeremy Hosier, who was also on duty.

[6] Darlene Blevins, a Security Shift Supervisor at the casino, proceeded to the area of the casino where Donovan was playing the slot machines. Blevins approached Donovan, showed him a copy of the July 19 letter, reminded him he was banned from the premises, and told him he must leave immediately. Donovan signed the copy of the letter and began walking away. Agent Hosier then made his way down to the area of the casino where Donovan was. Agent Hosier briefly spoke about the situation with Blevins and Terrance Sollars, a Security Shift Manager at Hoosier Park.

[7] Donovan went to a counter to redeem some tickets for cash and then began walking toward an exit of the casino. Agent Hosier, Agent Wilkinson, Blevins, and Sollars followed him. Agent Hosier approached Donovan and asked to speak with him about his trespassing, but Donovan said "[he] was leaving, [he] had the right to leave," (Appellant's Prior Cause App. Vol. 2 at 408), and continued walking quickly toward the exit. Agent Hosier attempted to explain

to Donovan he could not leave until he spoke with him about the trespassing crime he had just committed.

[8]     Donovan took an escalator and Agent Hosier took the stairs to catch up with Donovan. At the top of the escalator, Agent Hosier again asked Donovan to stop and asked for his identification. Donovan kept walking and ignored Agent Hosier as Agent Hosier walked alongside him. Agent Hosier then moved quickly to step in front of Donovan, told him to stop, and blocked him from exiting the doors of the casino. Donovan became loud and would not engage in a civil conversation with Agent Hosier. Agent Hosier informed Donovan he was being arrested for trespass and disorderly conduct. Agent Hosier began to handcuff Donovan, but Donovan resisted. Agent Wilkinson attempted to stabilize Donovan so Agent Hosier could handcuff him, but both agents were having trouble getting Donovan's arms behind his back. Blevins and Sollars then also aided in controlling Donovan so Donovan could be handcuffed. Donovan resisted so much he was eventually brought down to the ground by the IGC Agents and Hoosier Park's security employees. During the struggle to handcuff Donovan, Donovan knocked down a lamp and a decorative tree, spilled a fountain drink, and lost a shoe.

[9]     Agent Wilkinson and Agent Hosier escorted Donovan to the IGC Squad Office. Agent Hosier filed a probable cause affidavit for arrest, describing the events and noting Donovan admitted to Blevins he was aware of the July 19 letter as he had "given the eviction notice to his lawyer." (*Id.* at 99.) Sollars called the Anderson Police Department, who transported Donovan to jail.

[10] The State charged Donovan with Count I: Class A misdemeanor resisting law enforcement,[4] Count II: Class A misdemeanor criminal trespass,[5] and Count III: Class B misdemeanor disorderly conduct.[6] In August 2012, the State dismissed Counts I and II and entered into a pretrial diversion agreement with Donovan regarding Count III.

[11] On December 27, 2012, Donovan sued Hoosier Park Appellees and IGC Appellees alleging false imprisonment, wrongful arrest, malicious prosecution, abuse of process, and battery. Both Hoosier Park Appellees and IGC Appellees moved for summary judgment on all claims. The court held a hearing on all defendants' motions for summary judgment on May 6, 2015. On September 25, 2015, the court entered summary judgment in favor of all defendants on all claims. The trial court found Donovan waived all state law claims against the IGC Appellees by failing to provide the IGC Appellees timely notice within 270 days of the "loss," as required by the Indiana Tort Claims Act ("ITCA"). Ind. Code § 34-13-3-6(a) (1998).

[12] On October 20, 2015, Donovan filed a Motion to Correct Error. On October 23, 2015, the IGC Appellees filed a Motion to Correct Error, claiming the trial court erred in finding Donovan failed to timely file a notice of state tort claim. On November 30, 2015, the trial court granted the IGC Appellees' Motion to

---

[4] Ind. Code § 35-44-3-3(a)(1) (2011) (repealed by P.L. 126-2012, Sec. 53, eff. July 1, 2012).

[5] Ind. Code § 35-43-2-2(a)(1) (2009).

[6] Ind. Code § 35-45-1-3(a)(2) (2006).

Correct Error, vacating the portion of its summary judgment order addressing the state tort claims against the IGC Appellees, and stating it would review the state tort claims against the IGC Appellees and issue a subsequent order on the merits of those issues. The trial court also denied Donovan's Motion to Correct Error.

[13] Before the trial court issued its subsequent order on the remaining issues, Donovan filed a Notice of Appeal with this Court. The IGC Appellees filed a motion to remand to the trial court for resolution of the remaining state tort claims. On June 24, 2016, this Court granted the IGC Appellees' motion. On July 7, 2016, the trial court granted summary judgment in favor of the IGC Appellees as to the remaining state tort claims.

# Discussion and Decision

[14] We review summary judgment using the same standard as the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Rogers v. Martin,* 63 N.E.3d 316, 320 (Ind. 2016). All facts and reasonable inferences are construed in favor of the non-moving party. *City of Beech Grove v. Beloat,* 50 N.E.3d 135, 137 (Ind. 2016). Where the challenge to summary judgment raises questions of law, we review them *de novo*. *Rogers,* 63 N.E.3d at 320.

[15] Before we can address Donovan's tort claims against the Hoosier Park Appellees and the IGC Appellees, we must resolve Donovan's contention that he was "not properly evicted" from Hoosier Park, (Appellant's Br. at 17), as many of his tort claims are predicated on his assumption of this fact. Specifically, Donovan claims there is a genuine issue of material fact as to whether he was properly evicted from Hoosier Park and, therefore, a genuine issue of material fact as to whether he was trespassing when he returned to the casino on August 5, 2011.

### Hoosier Park's Eviction of Donovan

[16] "Gaming is a regulated industry." *Stulajter v. Harrah's Indiana Corp.,* 808 N.E.2d 746, 749 (Ind. Ct. App. 2004). Our Indiana Legislature established Title 4, Article 35 of the Indiana Code, which governs gambling games at racetracks, to "maintain the public's confidence and trust through (1) comprehensive law enforcement supervision; and (2) the strict regulation of facilities, persons, associations, and gambling games at racetracks[.]" Ind. Code § 4-35-3-4 (2007). The Legislature granted the IGC the authority and duty to administer, regulate, and enforce the system of gambling games at racetracks. *See generally* Ind. Code § 4-35-4-1 (2007). Within these powers is the IGC's power to "eject or exclude or authorize the ejection or exclusion of a person from a facility at which gambling games are conducted." Ind. Code § 4-35-4-9(a) (2007).

[17] The IGC's rules and regulations regarding exclusion and eviction of persons from casinos are codified at 68 Indiana Administrative Code Section 6-1-1 *et*

*seq.* The IGC requires casino licensees to implement certain procedures regarding eviction[7] of patrons. *See* 68 I.A.C.§ 6-2-1(a) (2007) (listing the specific procedures casino licensees must implement). When a casino evicts a person, it must provide the evicted person with the following:

> (a) At the time of eviction, the casino licensee shall provide the evicted person with a two-part form that has been approved by the commission and shall advise the evicted person of, at a minimum:
>
> > (1) The reason for the eviction.
> >
> > (2) The earliest date the person may apply for readmission.
> >
> > (3) The criteria that must be satisfied for readmission.
> >
> > (4) The procedure that must be followed in order to apply for readmission.

---

[7] We note the parties' briefs and case law on this topic use the terms "exclusion" and "eviction" interchangeably, but the Indiana Administrative Code distinguishes between them. Thus, we briefly explain the difference.

Pursuant to the Indiana Administrative Code, the IGC maintains authority to *exclude* a person from entering *any* gaming area. *See* I.A.C. § 6-1-3 (2007) (listing reasons warranting exclusion of a person). If the IGC *excludes* a person from entering gaming areas, then a casino licensee must *evict* that person from its gaming area if the casino "knows or reasonably should know that the person is an excluded person." I.A.C. § 6-1-1(b) (2010).

However, a casino licensee may, in its own discretion, *evict* a person from its casino gambling operation—regardless of whether the IGC has already excluded that person—for any lawful reason. I.A.C. § 6-1-1(d) (2010). In that case, the casino licensee "may seek to have a person it has evicted from its casino gambling operation placed on the [IGC's] exclusion list." *Id*. Stated differently, while the IGC maintains authority to exclude persons from all casinos, casino licensees maintain authority to evict persons from only its own casino gambling operations. The latter-described scenario—eviction—is the procedure Hoosier Park invoked here.

68 I.A.C. § 6-2-2(a) (2007).

[18] Hoosier Park sent Donovan the July 19 letter per the above requirements for eviction of a patron. The letter clearly warned Donovan he would be "considered a trespasser and subject to arrest" if he returned to the casino during any period of his eviction. (Appellant's App. Vol. II at 35). However, Donovan argues Hoosier Park addressed him using the wrong middle initial, failed to give him a reason under 68 I.A.C. § 6-2-2(a)(1) for his eviction, and mailed him marketing materials after mailing the July 19 letter. Because of these alleged irregularities on Hoosier Park's part, Donovan claims there is a question of material fact as to whether he was "properly evicted." (Appellant's Br. at 17.) We are unpersuaded.

[19] If Hoosier Park, in evicting Donovan, was in violation of any of the IGC's administrative code provisions regarding eviction, Hoosier Park was answerable to the IGC, not to Donovan. *See* Ind. Code § 4-35-4-2(a)(2) ("The commission shall . . . Conduct all hearings concerning civil violations of this article."). The correct avenue, therefore, for Donovan to have challenged the content of the July 19 eviction letter, was to petition the IGC for a hearing. *See, e.g., Stulajter,* 808 N.E.2d at 749 (holding plaintiff could not bring a private right of action against a casino for allegedly violating an IGC regulation regarding the voluntary exclusion program, because "the duty to determine requirements of and enforce the voluntary exclusion program rests with the Commission . . . . Therefore, proper enforcement of IC 4-33-4-3 is through the Commission and not a private cause of action."). We thus agree with the trial court's finding

there was no genuine issue of material fact that Donavan was evicted from Hoosier Park pursuant to 68 I.A.C. § 6-2-2.

*Trespass*

[20] "A person who, not having a contractual interest in the property . . . knowingly or intentionally enters the real property of another person after having been denied entry by the other person or that person's agent . . . commits criminal trespass, a Class A misdemeanor." Ind. Code § 35-43-2-2(a)(1) (2009). A person has been "denied entry" when the person has been notified of the restriction by means of "personal communication, oral or written[.]" Ind. Code § 35-43-2-2(c)(1).

[21] We have already concluded the trial court properly found Donovan was evicted from Hoosier Park. Hoosier Park denied Donovan entry to its premises in the July 19 eviction letter. After having been denied entry, Donovan intentionally returned to Hoosier Park on August 5, 2011. Thus, as a matter of law, Donovan was trespassing.[8] *See Lyles v. State,* 970 N.E.2d 140, 143 (Ind. 2012) (evidence was sufficient defendant committed criminal trespass where defendant was neither an owner nor employee of bank, and bank manager had

---

[8]Donovan does not dispute that he had no contractual interest in Hoosier Park. "A 'contractual interest in property' is a right, title, or legal share of real property arising out of a binding agreement between two or more parties." *Lyles v. State,* 970 N.E.2d 140, 143 n.3 (Ind. 2012).

asked defendant to leave bank premises, but defendant refused to leave bank premises).

# I. Claims against IGC Appellees

[22] Donovan argues the trial court erred in granting summary judgment for the IGC Appellees on his claims of wrongful arrest, false imprisonment, abuse of process, malicious prosecution, and battery.

### *Statutory Immunity*

[23] The Indiana Tort Claims Act ("ITCA") provides governmental entities, or governmental employees acting within the scope of the employee's employment, immunity from liability for certain acts. Specifically,

> [a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss from . . . [t]he adoption and enforcement of or failure to adopt or enforce . . . a law (including rules and regulations) . . . unless the act of enforcement constitutes false arrest or false imprisonment.

*Tallman v. State*, 13 N.E.3d 854, 857 (Ind. Ct. App. 2014) (quoting Ind. Code § 34-13-3-3(8)). "The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Bushong v. Williamson,* 790 N.E.2d 467, 472 (Ind. 2003). "Whether the ITCA imparts immunity to a governmental

entity is a question of law for the court to decide." *Lee by & through Estes v. Bartholomew Sch. Corp.,* 75 N.E.3d 518, 525 (Ind. Ct. App. 2017).

### *False Imprisonment and False Arrest*

[24]    As noted above, false arrest and false imprisonment "fall outside the perimeters of the immunity conferred by the ITCA." *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2005), *trans. denied*. The tort of false imprisonment occurs when there is an (1) unlawful (2) restraint (3) upon one's freedom of movement or the deprivation of one's liberty (4) without consent. *Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420, 432 (Ind. Ct. App. 2016) (citing *Miller*, 777 N.E.2d at 1104-05).

[25]    "[W]here a claim for false imprisonment stems from an alleged false arrest, 'we need not make a separate analysis for the former.'" *Tallman v. State,* 13 N.E.3d at 857 (citing *Row v. Holt,* 864 N.E.2d 1011, 1016 (Ind. 2007)).

> Where the plaintiff claims false arrest, she must demonstrate the absence of probable cause to make the arrest. Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which would warrant a person of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. Where the plaintiff in a false arrest action fails to demonstrate the absence of probable case, or if the record as a whole reflects probable cause for the arrest, then the plaintiff's case must fail.

*Ali,* 53 N.E.3d at 432 (internal quotations omitted).

[26] The undisputed evidence shows Agent Hosier and Agent Wilkinson were responding to Hoosier Park security employees' alert about Donovan when they approached Donovan. The agents were relying on the information Hoosier Park security staff conveyed to them regarding an evicted patron. The facts known to the agents at the time they approached Donovan—Blevins' and Sollars' indication that Donovan, an evicted person, was at the casino—was enough to lead a reasonable person to believe Donovan was indeed criminally trespassing. *See supra* ¶ 22. Thus, based on the information received from Sollars and Blevins, the IGC agents had probable cause to arrest Donovan, and their actions do not constitute false arrest or false imprisonment. *See Miller*, 777 N.E.2d at 1105 (based on facts known to officers at time of arrest, officers had probable cause to arrest Miller, and thus their actions did not constitute false arrest or false imprisonment). Because the IGC agents had probable cause to arrest Donovan based on Donovan's trespassing, we need not address Donovan's arguments the IGC agents lacked probable cause to arrest based on disorderly conduct or resisting law enforcement.[9]

---

[9] In his Complaint, Donovan also claimed he was wrongfully arrested in violation of the Fourth and Fourteenth Amendments to the United States Constitution. (Appellant's App. Vol. II at 32.) We agree with the trial court's finding this claim was barred under 42 U.S.C.A. § 1983, as the State is not a "person," and "therefore, neither the State nor its officials when sued in their official capacity can be sued for money damages under this section." *Benedetto v. Indiana Univ.*, 707 N.E.2d 1062, 1063 (Ind. Ct. App. 1999). Donovan's argument on appeal that the IGC Appellees failed to show they were acting as state officials has no merit. The Indiana Gaming Commission is a "state office" created by statute under Title 4, "State Offices and Administration." *See* Ind. Code § 4-33-3-1 (1993). Furthermore, Donovan named Agent Hosier and Agent Wilkinson in their official capacities when he filed this suit, raising a presumption that they were sued in their official capacities. *See Crawford v. City of Muncie*, 655 N.E.2d 614, 620 (Ind. Ct. App. 1995) ("If a plaintiff seeks to sue public officials in their personal capacities or in both their personal and official capacities, the plaintiff should expressly say so in the complaint.") (internal quotations omitted), *reh'g denied,*

*Remaining Claims*

[27]  Donovan's remaining tort claims of abuse of process, malicious prosecution, and battery against the IGC Appellees are barred by statutory immunity under the ITCA.

[28]  In arresting Donovan, Agent Hosier and Agent Wilkinson were acting within the scope of their employment as defined by Ind. Code § 34-13-3-3(8). As IGC agents, Hosier and Wilkinson are "vested with full police powers and duties[.]" Ind. Code § 4-33-4.5-1(a) (2005). Specifically, gaming agents "may act as an officer for the arrest of offenders who violate the laws of Indiana if the gaming agent reasonably believes that a crime has been, is being, or is about to be committed or attempted in the gaming agent's presence." *See* Ind. Code § 4-35-2-6 (2007); Ind. Code § 4-33-4.5-1(c). Thus, to the extent the IGC agents' acts of arresting Donovan and filing of a probable cause affidavit for Donovan's arrest could satisfy the torts of malicious prosecution or abuse of process, these claims are barred by the ITCA. *See Katz-Crank v. Haskett*, 843 F.3d 641, 651 (7th Cir. 2016) (finding plaintiff's claims against state officials of malicious prosecution and abuse of process fell "comfortably within the state immunity bar" of the ITCA), *cert. denied*; *Butt v. McEvoy,* 669 N.E.2d 1015, 1018 (Ind. Ct. App. 1996) (police officer was acting in scope of employment in providing information to sheriff's office that led to judicial proceedings against plaintiff,

---

*trans. denied.* "A suit against a public official in his official capacity is simply a suit against the public entity itself." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985)).

and thus police officer was immune from liability under ITCA on claim for malicious prosecution).

[29] Similarly, battery falls within the statutory immunity of ITCA. *See Bushong*, 790 N.E.2d at 473-74 (no genuine issue of material fact battery occurred in the scope of employment where gym teacher of a school corporation, a government employee, struck student after student kicked gym teacher in the buttocks, and thus gym teacher was immune from liability under ITCA). Because the undisputed evidence shows the IGC agents did not falsely imprison Donovan, and Donovan's abuse of process, malicious prosecution, and battery claims are barred by the ITCA, we affirm the trial court's summary judgment in favor of the IGC Appellees.

## II. Claims Against Hoosier Park Appellees

### *False Arrest and False Imprisonment*

[30] The undisputed facts demonstrate IGC Agent Hosier arrested Donovan, not Hoosier Park employees. Nevertheless, Donovan claims Blevins and Sollars "proximately caused" IGC Agents Hosier and Wilkinson to falsely arrest and falsely imprison Donovan when they alerted the IGC office of Donovan's presence at the casino, (Appellant's App. at 18-19), and therefore, the Hoosier Park Appellees are liable for false imprisonment. Because Donovan does not argue Hoosier Park employees falsely imprisoned Donovan, but instead argues the Hoosier Park employees proximately caused Donovan's arrest, our finding that the IGC Appellees did not commit false imprisonment is dispositive of this

claim. *See Conn v. Paul Harris Stores, Inc.,* 439 N.E.2d 195, 198-99 (Ind. Ct. App. 1989) (finding liability for false arrest will not be imposed on a defendant who does nothing more than notify an officer when the defendant believes a crime has been committed), *reh'g denied.* We therefore affirm the trial court's summary judgment on this claim.

### *Abuse of Process*

[31]   Donovan claims Hoosier Park employees

> informed the IGC Officers that Donovan was trespassing even though Donovan had not actually been evicted. Therefore, there is a question of material fact as to whether this was done in an attempt to merely make an example out of Donovan due to his previous claims against casinos, or merely an attempt to stop Donovan from gambling at their casino.

(Appellant's Br. at 26-27.)

[32]   An abuse of process claim requires a showing that a defendant had "(1) ulterior purpose or motives; and (2) a willful act in the use of process not proper in the regular conduct of a proceeding." *Watson v. Auto Advisors, Inc.,* 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005) (internal quotations omitted), *trans. denied.* "If a defendant's acts are procedurally and substantively proper under the circumstances, then his intent is irrelevant." *Id.* "A party may not be held liable for abuse of process if the legal process has been used to accomplish an outcome for which the process was designed to accomplish*." Id.*

[33] Donovan cites no facts supporting a claim the Hoosier Park Appellees had a purpose other than to remove Donovan, an evicted person, from the casino premises. And we have already resolved that Hoosier Park properly "evicted" Donovan for purposes of this cause. Thus, as Donovan was trespassing on August 5, 2011, and Hoosier Park alerted the IGC agents to remove him from the premises, the Hoosier Park Appellees' actions were substantively and procedurally proper, and accomplished the outcome the legal process was designed to accomplish: to ensure Donovan would not return to Hoosier Park. Donovan thus fails to show Hoosier Park Appellees committed abuse of process. *See Watson,* 822 N.E.2d at 1029-30 (no abuse of process occurred where defendant accomplished the outcome the legal process was designed to accomplish).

### *Malicious Prosecution*

[34] Donovan next claims malicious prosecution by Hoosier Park Appellees. To establish a case for malicious prosecution, the plaintiff must prove "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Ali*, 53 N.E.3d at 431.

[35] Here, the Hoosier Park Appellees did not institute or cause to be instituted the criminal action against Donovan; the prosecutor did. Therefore, we affirm the trial court's grant of summary judgment in favor of Hoosier Park on Donovan's

malicious prosecution claim. *See Bah v. Mac's Convenience Stores, LLC,* 37 N.E.3d 539, 547 (Ind. Ct. App. 2015) (where prosecutor, and not convenience store or manager appellees, instituted or caused to be instituted a prosecution against appellant, court affirmed summary judgment for appellees on appellant's malicious prosecution claim), *trans. denied*.

### *Battery*

[36] Donovan claims in arresting him, the Hoosier Park security agents committed battery against Donovan. An actor commits the tort of battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Mullins v. Parkview Hosp. Inc.,* 865 N.E.2d 608, 610 (Ind. 2007) (citing Restatement (Second) of Torts § 13 (1965)).

[37] Donovan contends the Hoosier Park Appellees failed to designate evidence "that the people involved [in Donovan's arrest] used reasonable force[,]" and that "the designated evidence is clear Sollars and Blevins assisted the IGC [agents] and committed battery against Donovan." (Appellant's Br. at 25.) We disagree.

[38] First, the designated evidence included surveillance footage showing the entire altercation between Donovan, the IGC agents, and the Hoosier Park security employees. When Agent Hosier, Agent Wilkinson, Sollars, and Blevins began following Donovan, Donovan continued to evade them and ignore Agent

Hosier's questioning. Agent Hosier eventually stepped in front of Donovan and told him to stop, blocking Donovan from exiting the doors of the casino. When Donovan became loud and would not engage with Agent Hosier civilly, Agent Hosier informed Donovan he was being arrested for trespass and disorderly conduct. Agent Hosier began to arrest Donovan but Donovan resisted. Agent Wilkinson attempted to help stabilize Donovan so Agent Hosier could handcuff him, but both agents were having trouble getting Donovan's arms behind his back. Blevins and Sollars then also aided in controlling Donovan so Donovan could be handcuffed.

[39] Based on the designated evidence—the surveillance video—we agree with the trial court's conclusion the IGC agents used reasonable force in arresting Donovan. *See* Ind. Code § 35-41-3-3(b) (1993) ("A law enforcement officer is justified in using reasonable force if the officer reasonably believes that the force is necessary to effect a lawful arrest."); Ind. Code § 4-33-4.5-1(a) (2005) ("a gaming agent is vested with full police powers and duties"). While the video showed a physical altercation between Donovan and the IGC agents and Hoosier Park security employees, it is also clear from the video the physical nature of the altercation could have been avoided if Donovan had stopped when Agent Hosier repeatedly asked him to stop. The extent of Sollars' and Blevins' participation in the arrest was merely to aid the IGC agents in controlling Donovan while Agent Hosier handcuffed Donovan. While Donovan claims Blevins "trip[ped] him," (Appellant's App. at 25), the surveillance video shows no evidence of this. Based on the surveillance video,

there is no evidence the Hoosier Park employees acted with any intent to cause harmful or offensive contact to Donovan. We therefore affirm the trial court's grant of summary judgment to the Hoosier Park Appellees on this claim.

# Conclusion

[40] The designated evidence demonstrates there was no genuine issue of material fact as to any of Donovan's allegations against the Hoosier Park Appellees or the IGC Appellees. As the law as applied to those facts entitles the Appellees to summary judgment, we affirm the judgment of the trial court.

[41] Affirmed.

Najam, J., and Bailey, J., concur.