

**FILED**

Dec 28 2017, 6:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

David A. Given
Brian J. Paul
Matthew C. Olsen
Faegre Baker Daniels LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Coutar Remainder I, LLC,
Kooshtard Property I, LLC,
Mac's Convenience Stores, LLC,
f/k/a Bigfoot Food Stores, LLC,
and Union Fidelity Life
Insurance Company,

*Appellants-Defendants,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 28, 2017

Court of Appeals Case No.
53A01-1704-PL-798

Appeal from the Monroe Circuit
Court

The Honorable Frances G. Hill,
Judge

Trial Court Cause No.
53C06-1402-PL-251

**Najam, Judge.**

## Statement of the Case

[1] Kooshtard Property I, LLC is the owner of the fee simple title to certain land in Monroe County that abuts Indiana State Road 37 between Bloomington and Martinsville (the "Kooshtard Property"). Coutar Remainder I, LLC holds a remainder interest in the Kooshtard Property, and Mac's Convenience Stores, LLC, d/b/a Circle K, holds a leasehold interest.[1] In 2014, the State initiated condemnation proceedings to take a parcel from the Kooshtard Property in connection with the State's development of Interstate 69 over and along State Road 37. During those proceedings, the property owners (hereinafter collectively referred to as "Kooshtard") asserted that the State's development of Interstate 69 would eliminate access to the Kooshtard Property. The trial court disagreed and entered summary judgment for the State.

[2] We hold that Kooshtard is entitled to a trial on damages on the State's elimination of the Kooshtard Property's access to State Road 37. In particular, Kooshtard's chain of title includes a deed from a previous owner to the State, which is binding upon both Kooshtard and the State. The deed contains an access control line restriction as a covenant running with the land, and the restriction includes an exception or opening in the access control line, which provides the Kooshtard Property with a right of access to State Road 37. The State's elimination of that opening constitutes the taking of a property right

---

[1] Union Fidelity Life Insurance Company, a named defendant below, does not participate in this appeal.

subject to compensation. As such, we reverse and remand for further proceedings.

## Facts and Procedural History[2]

In 1971, Jane Ellis deeded to the State a portion of certain real property she owned for the State's construction of State Road 37 ("the first taking"). The Ellis deed provided that "all rights and easements of ingress and egress to, from, and across" State Road 37 "to and from the owner's abutting lands" were permanently extinguished. Appellants' App. Vol. II at 184. However, the deed also reserved to Ellis and her successors in title an opening of 77.59 feet in the State's access control line to State Road 37. *Id.* at 185. The deed states that the access control line restriction, which includes an exception or opening, "shall be a covenant running with the land." *Id.*

The deed "further" reserved to Ellis and her successors "access to a local service road" located within the State Road 37 right of way between the Ellis property line and the opening in the access control line. *Id.* From there, one could enter onto, or exit from, State Road 37. In 2001, Kooshtard became the successor in title, in relevant part, to the Ellis property as described in the 1971 Ellis deed.

The western boundary of the Kooshtard Property is contiguous to the eastern boundary of the State Road 37 right of way. At the southwest corner of the

---

[2] We held oral argument on December 7, 2017, in the our courtroom in the State Capitol.

Kooshtard Property, the property line turns and runs eastward for 57.88 feet and then abruptly turns southward for 60.39 feet. *See* Appellants' App. Vol. IV at 221, 244. These courses are described in the affidavit of Kooshtard's expert Rory O'Bryan as the "common north boundary line" and the "common east boundary line," respectively. *Id.* at 244. There is no access control along these common boundary lines.

[6] Sometime after the Ellis deed, the State conveyed control over the "local service road" mentioned in the deed to Monroe County, which the County now maintains as "Wayport Road." Wayport Road abuts the Kooshtard property along the common north boundary line and the common east boundary line. At that location, Wayport Road lies adjacent and contiguous to the Kooshtard Property and entirely within the State Road 37 right of way.

[7] Currently, whenever traffic travels east from State Road 37 to the Kooshtard Property or west from the Kooshtard property to State Road 37, the traffic utilizes both the State Road 37 right of way and the opening in the access control line and passes over Wayport Road where it meets the common north boundary line and the common east boundary line. Kooshtard's right to utilize the right of way is based upon its common law status as an abutting property owner, and its right to utilize the opening in the access control line is based upon the covenant that runs with the land in the Ellis deed.

[8] Between Bloomington and Martinsville, the State is converting State Road 37 into Interstate 69. The State plans to close the opening in the access control line

at the Kooshtard Property created by the Ellis deed. In order to provide another route of access to and from the Kooshtard Property, the State plans to extend Wayport Road from its current location, where it abuts the common north boundary line and the common east boundary line, around the southern border of the Kooshtard Property and then to the north and east, where Wayport Road will connect with Sample Road. Sample Road will then have direct access to Interstate 69. The State's new traffic plan will require drivers to travel an additional one-half mile between the Kooshtard Property and Interstate 69 when entering or leaving the entrance to the Kooshtard Property along the common north boundary line and the common east boundary line.

[9] On February 11, 2014, the State filed a complaint to condemn a parcel to be taken from the Kooshtard Property in order to proceed with the project ("the second taking"). The State attached to its complaint a "right-of-way parcel plat" that indicates both the fee simple parcel to be taken and the opening in the access control line created by the Ellis deed "to be closed." Appellants' App. Vol. II at 38. Kooshtard answered that, in addition to the fee simple parcel, the closure of the access control line was a compensable taking. According to Kooshtard, the closure of the access control line would, in itself, result in more than $1.3 million in damages and the closure of a gas station and convenience store located on the property. The report of three court-appointed appraisers assessed the total amount of just compensation, including the fair market value of the fee simple parcel taken and damages to the residue, at $420,000, but the report did not consider closure of the opening.

The State moved for summary judgment only on the grounds that the closure of the access control line was not, as a matter of law, a compensable taking given the proposed extension and routing of Wayport Road to Sample Road and Sample Road's connection to Interstate 69. In response to the State's motion, Kooshtard argued that the closure of the access control line

> goes to the ingress and egress. And so, it is a taking of that element of our property entrance . . . . It is fundamental to the property itself. And . . . when this property was first deeded by . . . Ellis, this was the only way out and it is still the only way out.

Tr. at 36. The trial court agreed with the State that the closure of the access control line merely created a different route of travel to and from the Kooshtard property and, as such, did not constitute a taking. The court entered summary judgment and declared that its judgment was a final judgment. This appeal ensued in due course.

# Discussion and Decision

## *Standard of Review*

Kooshtard appeals the trial court's entry of summary judgment for the State. We review the trial court's grant or denial of summary judgment *de novo*. *Doe v. Ind. Dep't of Child Servs.*, 81 N.E.3d 199, 201 (Ind. 2017). We will affirm the entry of summary judgment only when the designated evidence reveals no genuine issue of material fact and entitles the moving party—here, the State—to judgment as a matter of law. *Id.* We also note that the trial court entered

detailed findings of fact and conclusions thereon in its summary judgment order. While such findings and conclusions are not required in a summary judgment and do not alter our standard of review, they are helpful on appeal for us to understand the reasoning of the trial court. *See Knighten v. E. Chicago Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015).

[12] As our Supreme Court has stated, "'[a]lthough takings cases may be extremely fact sensitive, the ultimate application of constitutional provisions to an established set of facts involves a pure question of law.'" *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 575 (Ind. 2007) (quoting *Taylor-Chalmers, Inc. v. Bd. of Comm'rs of LaPorte Cty.*, 474 N.E.2d 531, 536 (Ind. Ct. App. 1985) (Hoffman, J., concurring)). Indeed, as this Court has explained:

> As we have observed in the past, condemnation proceedings are comprised of two stages: (1) an initial or summary phase, and (2) the phase during which the fact finder determines damages. *City of Hammond v. Marina Entm't Complex, Inc.*, 733 N.E.2d 958, 966 (Ind. Ct. App. 2000), *trans. denied*. "During the initial or summary phase of the proceedings, the action consists solely of legal issues which are decided by the trial court." *Id.* "During the second stage of the condemnation proceedings the fact finder must determine the amount of damages sustained by the landowner." *Id.*

*State v. Dunn*, 888 N.E.2d 858, 861 (Ind. Ct. App. 2008), *trans. denied*. The initial phase is when the trial court must determine, as a matter of law, whether

a taking occurred.[3] *See id.* "Whether a taking has occurred is a question of law, and we review questions of law *de novo.*" *Id.* (citing *Biddle*, 860 N.E.2d at 575; *Bradley v. City of New Castle*, 764 N.E.2d 212, 216 (Ind. 2002)).

### *Kooshtard is Entitled to a Trial on Damages*

[13] Article 1, Section 21 of the Indiana Constitution provides that "[n]o person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." The threshold question in determining whether a taking has occurred is whether the landowner has a "property interest in the property" that has been acquired by the State. *Dunn*, 888 N.E.2d at 862. "'Property' in its legal sense means a valuable right or interest in something rather than the thing itself, and is the right to possess, use and dispose of that something in such a manner as is not inconsistent with law." *Id.* (citing *State v. Ensley*, 240 Ind. 472, 164 N.E.2d 342, 348-49 (1960)).

[14] The parties devote a substantial part of their briefs in disputing whether the facts establish that this is an "ingress/egress" case or a "traffic flow" case. *See id.* at 863-64. We conclude, however, that this case is unique and unprecedented on

---

[3] It is of no moment that Kooshtard's allegation—that the closure of the access control line was a taking—was made in response to the State's complaint for condemnation rather than as a freestanding complaint for inverse condemnation. *Hammond*, 733 N.E.2d at 966-67.

its "established set of facts," *see Biddle,* 860 N.E.2d at 575, in that, unlike any of the cases relied on by the parties, here the property owner's deed expressly provides for the right of access that is now being taken. Specifically, the Ellis deed states that "the access control line restriction shall be a covenant running with the land," and that restriction includes a 77.59-foot exception or opening in the metes and bounds description of the access control line to State Road 37. Appellants' App. Vol. II at 184-85. A covenant running with the land "constitutes a compensable interest in land." *Dible v. City of Lafayette*, 713 N.E.2d 269, 273-74 (Ind. 1999). Thus, under the 1971 Ellis deed, the opening is a property right that runs with the land for the use and benefit of Ellis and her successors in title, and Kooshtard is entitled as a matter of law to a trial on damages for the State's elimination of the opening.

[15] The State is also estopped in equity from asserting that the elimination of the opening is not compensable. The facts establish an estoppel by deed. A deed is in the nature of a contract between the grantor and the grantee. *See, e.g.*, *Fischer-Marsh v. Fischer*, 822 N.E.2d 1055, 1062-63 (Ind. Ct. App. 2005). One who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other. *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001) (citing 31 C.J.S. *Estoppel & Waiver* § 2 (1996)). Here, the rights of ingress to and egress from the Kooshtard Property were documented in the 1971 Ellis deed at the time of the first taking and were a bargained-for exchange between Ellis and

the State. The consideration included an exception or opening in the access control line restriction, expressly designated as a covenant running with the land, which is a property right.

[16] This is not the first encounter between the State and the owner of this property concerning the owner's rights of ingress and egress. The Ellis deed shows as a matter of law that, in the first taking, the State agreed to a 77.59-foot opening in the access control line facing the Ellis property and that Ellis agreed to extinguish any and all other rights of ingress and egress along State Road 37. And, again, the deed stated that the access control line restriction—which included the opening in that line—"shall be a covenant running with the land." Appellants' App. Vol. II at 184-85. As such, the State may not now repudiate the Ellis deed and contend that the opening in the access control line is not a property right held by the current owner.

[17] Nevertheless, the State contends that Kooshtard "only has a property right of ingress and egress to Wayport Road, not State Road 37." Appellee's Br. at 10. The State relies on the deed provision that states, "and further, the owner and her successors in title shall have access to a local service road where the owner's remaining land [after the taking] abuts the above-described . . . courses." Appellants' App. Vol. II at 184-85 (capitalization removed). The State's reliance on that provision is misplaced.

[18] First, the term "and further" indicates that the "access to a local service road" is access in addition to something else, and the something else is the 77.59-foot

opening in the access control line as described in the metes and bounds description of that line. Second, and as previously noted, the local service road that is now Wayport Road was located entirely within the State Road 37 right of way adjacent and contiguous to the Ellis parcel. Thus, the provision that "the owner shall have access to a local service road" merely reaffirmed that the taking and restrictions documented in the deed did not restrict the owner's common law right of access to the State Road 37 right of way across the 57.88-foot common north boundary line and the 60.39-foot common east boundary line, which the Ellis property shared with the right of way. While this provision underscores the owner's right of immediate access to the right of way, which leads directly to the opening in the access control line, it was legal surplusage because Ellis had a common law right of access to the right of way at that location as an abutting property owner. As our Supreme Court stated in *Ensley*: "[A]n abutting property owner has an easement of ingress and egress in a public highway and this constitutes a property right which cannot be substantially or materially interfered with or taken away without due compensation." 164 N.E.2d at 349. In other words, the Ellis deed reserves to the property owner a complete means of direct access over and across the State Road 37 right of way through the opening in the access control line to State Road 37 itself.

[19] We caution that our holding is simply that Kooshtard is entitled to a trial on damages for the State's taking of Kooshtard's property right in the opening in the access control line. We express no opinion on the amount of damages, if any, a fact finder might assess against the State for this particular taking. There

is a significant disparity between Kooshtard's claim of damages and the report of the court-appointed appraisers, but that disparity is not an issue on appeal. The question presented here is only whether a taking occurred. As we recently explained in *AAA Federal Credit Union v. Indiana Department of Transportation*, we will not "conflate[] the measure of damages for a compensable taking with the inquiry into whether such a taking happened at all." 79 N.E.3d 401, 406 (Ind. Ct. App. 2017), *trans. denied*.

[20] In sum, we agree with Kooshtard that the opening in the access control line is a property right. The State has taken Kooshtard's right to the use and benefit of the opening in the access control line contained in the 1971 Ellis deed. In the first taking, Ellis bargained for direct access to State Road 37 as a covenant running with the land, and her successors in title are entitled to the benefit of her bargain, which includes damages, if any, for the elimination of that property right by the second taking. The fact that the State may provide an alternate means of access to and from the Kooshtard Property does not obviate the fact that the opening in the access control line is a covenant running with the land, and the State's elimination of the opening is a compensable taking. Thus, as a matter of both law and equity, Kooshtard is entitled to a trial on damages for the closure of the access control line. Accordingly, we reverse the trial court's entry of summary judgment for the State, and we remand for further proceedings.

[21] Reversed and remanded.

Kirsch, J., and Brown, J., concur.