

FILED

Oct 30 2023, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan H. Babb
Jonathan W. Hughes
Bradley M. Dick
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

BARHAM INVESTMENTS, LLC &
COAST TO COAST CARMEL
CORP.

Alice M. Morical
Riley H. Floyd
Janet Lynn Thompson
Hoover Hull Turner LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

City of Carmel,

*Appellant-Defendant,*

v.

Barham Investments, LLC,
Marion County Treasurer, and
Coast to Coast Carmel
Corporation,

*Appellee-Plaintiff.*

October 30, 2023

Court of Appeals Case No.
22A-PL-2399

Appeal from the Marion Circuit
Court

The Honorable Stephen R.
Creason, Magistrate

Trial Court Cause No.
49C01-1712-PL-46760

**Opinion by Judge Bradford**
Judges May and Mathias concur.

**Bradford, Judge.**

# Case Summary

The City of Carmel used its power of eminent domain to convert the intersection of Keystone Avenue and 96th Street into a roundabout interchange ("the Project"). Barham Investments, LLC ("Barham"), owns a car dealership, whose main entrance was on Threel Road, near the intersection that Carmel needed to acquire to complete the Project. In April of 2018, the trial court entered an agreed order of appropriation and appointment of appraisers ("the Agreed Order"). Barham considered the appraisers' valuation of the Property to be too low because the taking allegedly extinguished its easement in Threel Road.

In January of 2021, Carmel moved for partial summary judgment arguing that Barham was not entitled to compensation for its loss of access to Threel Road, which motion the trial court denied. In May of 2022, after a jury trial, the jury awarded Barham $2.4 million in damages. Carmel moved to correct error, for new trial, or for remittitur. The trial court denied Carmel's motions and Carmel appealed, raising multiple issues, including whether the trial court had erred in denying its partial-summary-judgment motion. Because we find that issue dispositive, and because Barham did not have a cognizable interest in Threel Road at the time, we reverse and remand with instructions to grant Carmel partial summary judgment on this issue.[1]

---

[1] Due to our disposition of partial-summary-judgment issue, we need not reach the remaining issues.

## Facts and Procedural History

[3] In December of 2017, Carmel exercised its eminent-domain power to construct the Project. In doing so, Carmel filed a condemnation complaint in which it claimed that it needed to acquire three separate property interests from Barham, including 0.017 acres in fee simple, an access-control line, and 0.0111 acres in a temporary right-of-way for construction ("the Property"). Barham objected to Carmel's complaint, claiming that Carmel had "failed to properly identify all of the ownership interests being extinguished by the taking. Namely, the easement rights of the landowner to access and use Threel Road." Appellant's App. Vol. II p. 97. Barham's car dealership consisted of a four-story, glass-enclosed car showcase and a guest-entry area positioned towards the dealership's main entrance on Threel Road, which had run alongside Keystone Avenue. However, Carmel had already condemned Threel Road in a separate cause: *Carmel v. County Line Owners Association, Inc.*, Case No. 49D02-1801-PL-003953 ("the *County Line Action*"). So, Carmel did not name Threel Road in its condemnation complaint or seek to acquire it.

[4] In April of 2018, the trial court denied Barham's objection and the parties entered into the Agreed Order, which authorized Carmel's acquisition of the Property. Barham consented to the "Appropriation of Real Estate as sought in the Complaint." Appellant's App. Vol. II p. 104. In the Agreed Order, the trial court ordered that the taking consisted of "frontage along Threel Road" and that the access-control line "will be the new west property line of the subject, and the intent is to limit any access to the west of this line towards Keystone."

Appellant's App. Vol. II pp. 104–05.  The Agreed Order did not include any acquisition of Threel Road.

[5] Later that month, the trial court instructed the three court-appointed appraisers to appraise the Property described in Carmel's complaint.  In June of 2018, the appraisers assessed the total just compensation due to Barham to be $163,000.00.  Barham disputed the appraisers' valuation, alleging that the "total damages assessed to [Barham] are too low[,]" and requested a jury trial.  Appellant's App. Vol. II p. 124.

[6] In January of 2021, Carmel moved for partial summary judgment, arguing that Barham was not entitled to compensation for its loss of access to Threel Road.  In its motion, Carmel relied on the *County Line Action*, which, in part, had granted Carmel "the total acquisition of Threel Road" in April of 2018.  Appellant's App. Vol. IV p. 16.  In March of 2022, the trial court denied Carmel's motion for partial summary judgment, finding that "there are genuine issues of material facts that remain unresolved."  Appellant's App. Vol. IV p. 108.  In doing so, trial court explained that Carmel "cite[d] no law that definitively foreclose[d] [Barham]'s arguments for compensation for the elimination of the ingress and egress easements or the diminution of value that the loss ha[d] caused to the value of their properties."  Appellant's App. Vol. IV p. 110.

[7] The trial court conducted a jury trial from May 24 to May 26, 2022, at the conclusion of which the jury awarded Barham $2.4 million in damages.

Carmel moved to correct error, for new trial, or for remittitur, and moved to strike and correct the judgment concerning interest. The trial court agreed with Carmel's position on interest; however, it denied Carmel's motions to correct error and for new trial or remittitur.

# Discussion and Decision

## A.  Standard of Review

[8] Carmel sought partial summary judgment claiming that Barham was not entitled to compensation "as a result of the loss of access to Threel Road." Appellant's App. Vol. II p. 142. "The standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Row v. Holt*, 864 N.E.2d 1011, 1013 (Ind. 2007). All inferences should be drawn in favor of the non-moving party. *Id.*

[9] In denying Carmel's motion, the trial court concluded that Carmel had "cite[d] no law that definitively foreclose[d] [Barham]'s arguments for compensation for the elimination of the ingress and egress easements or the diminution of value that the loss has caused to their properties." Appellant's App. Vol. II p. 110. "We review the trial court's grant or denial of summary judgment *de novo*." *Coutar Remainder I, LLC v. State*, 91 N.E.3d 610, 614 (Ind. Ct. App. 2017), *trans. denied*.

## B. Whether the Closing of Access to Threel Road Constitutes a Compensable Taking

[10] Whether a taking has occurred is a question of law, *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 575 (Ind. 2007), which we review *de novo*. *Bradley v. City of New Castle*, 764 N.E.2d 212, 216 (Ind. 2002). When considering whether a taking has occurred, the threshold question is "whether the plaintiff landowner has a property interest in the property that has been acquired by the State." *State v. Dunn*, 888 N.E.2d 858, 862 (Ind. Ct. App. 2008), *trans. denied*; *see also* Ind. Code § 32-24-1-16 (allowing inverse condemnation suits where a "person ha[s] an interest in property"). In the context of property owners abutting public roads, two principles are well-settled: "First, the right of an abutting landowner to ingress and egress over the public roads is a cognizable property right, and substantial or material interference with this right by the [S]tate is a compensable taking ('the ingress-egress rule'). […] Second, by contrast, an abutting landowner has no cognizable property right in the free flow of traffic past his property ('the traffic-flow rule')." *AAA Fed. Credit Union v. Ind. Dep't of Transp.*, 79 N.E.3d 401, 405 (Ind. Ct. App. 2017), *trans. denied*.

[11] Carmel argues that it "did not in this case acquire Threel Road or an easement in Threel Road"; consequently, this case should be controlled by the traffic-flow rule and the trial court erred in leaving the question of whether there had been the loss of an easement for the jury. Appellant's Br. p. 26. For its part, Barham argues that the trial court properly denied Carmel's motion for summary judgment because this case involves an easement and a substantial change in

how the Property is used. We agree with Carmel that it did not acquire Barham's easement in this case and, even if it had, Barham's easement granted it only a right to ingress and egress over Threel Road—not to a curb cut on Threel Road—and the interference is neither substantial nor material.

[12] Barham claims that Carmel owed it compensation for the taking of its ingress and egress easement in Threel Road. At some point, Barham acquired a

> common Non-Exclusive Easement *over, across and under the Easement Property* [(*i.e.*, Threel Road)] for pedestrian and vehicular traffic, sewer lines, water lines, fire protection lines and other utilities. The purpose of such easement is to provide the owners, lessees and occupants of such property within County Line Commercial Park ingress and egress to such property, and to provide the means for the owners of property within County Line Commercial Park to service their property with water mains, sanitary sewer mains, and fire protection water lines.

Appellant's App. Vol. V p. 67 (emphasis added). The Agreed Order appropriated a "fee simple area that is a triangular strip of land off of the northwest side of the lot, *adjacent to* Threel Road" and a "temporary right of way of 0.111 acres at the southwest corner of the site to remove the drive entrance and complete drainage work." Appellant's App. Vol. II pp. 104–05 (emphasis added). Noticeably absent from that acquisition is Barham's alleged interest in Threel Road itself, in which Barham claimed to have maintained its ingress and egress easement.

[13] In general, "[e]asements are limited to the purpose for which they are created[,]" *Whitt v. Ferris*, 596 N.E.2d 230, 233 (Ind. Ct. App. 1992), and

convey no other rights beyond those necessary for the enjoyment of the easement. *Wendy's of Ft. Wayne, Inc. v. Fagan*, 644 N.E.2d 159, 162 (Ind. Ct. App. 1994). Based on the language of Barham's deeded easement, at some point, Barham had ingress and egress rights in Threel Road, not to any specific curb-cut onto Threel Road or in the Property that Carmel sought to acquire.

[14] In *Coutar*, the property owner had deeded to the State a portion of real estate that specifically reserved to the property owner "an opening of 77.59 feet in the State's access control line to State Road 37[,]" a covenant which ran with the land. 91 N.E.3d at 612. The parties devoted much briefing to whether this was an ingress-and-egress case or a traffic-flow case; however, we concluded that the case was "unique and unprecedented on its established set of facts […] in that, unlike any of the cases relied on by the parties, here the property owner's deed expressly provide[d] for the right of access that [was] being taken." *Id.* at 615 (internal citations and quotations omitted). The State attempted to close that opening in its condemnation action, but we concluded that "the opening in the access control line [was] a property right" because the "deed reserve[d] to the property owner a complete means of direct access over and across the State Road 37 right of way through the opening in the access control line to State Road 37 itself." *Id.* at 616.

[15] Here, unlike in *Coutar*, the deeded easement does not expressly reserve a curb-cut right from the Property to Threel Road. The deed simply reserved an easement "over, across and under [Threel Road] for pedestrian and vehicular traffic, sewer lines, water lines, fire protection lines and other utilities."

Appellant's App. Vol. V p. 67. Additionally, the Agreed Order gave Carmel the right to acquire only "a portion of the *frontage along* Threel Road[,]" including a 0.017-acre triangular-shaped strip of land in fee simply and a 0.111-acre temporary right-of-way—not Threel Road itself, which is the property that Barham's easement burdened. Appellant's App. Vol. II p. 104 (emphasis added). We cannot expand the deeded easement's language to include a right to curb-cut access to Threel Road from the Property when the easement reserved no such right. *See Wendy's of Ft. Wayne*, 644 N.E.2d at 162.

[16] In any event, however, Carmel appropriated Threel Road—the servient estate—in the *County Line Action*. In the *County Line Action*, the trial court granted Carmel, among other things, "the total acquisition of Threel Road[,]" causing "Threel Road [to] be permanently closed as a result of the Project." Appellant's App. Vol. VIII pp. 85–86. With its total acquisition of Threel Road, Carmel acquired all the interests in Threel Road, including Barham's easement that it had received from the County Line Realty Company.[2]

[17] While Indiana case law appears silent on the issue, other authorities have held that the taking of real property by eminent domain extinguishes any easements burdening the property. *See Matter of Ossining Urb. Renewal Agency v. Lord*, 350

---

[2] Presumably, Barham knew, or should have known, about the *County Line Action* by virtue of its membership in the County Line Owners Association and could have sought an inverse condemnation claim to protect its interest. *See Murray v. Lawrenceburg*, 925 N.E.2d 728, 733 (Ind. 2010) (concluding "that inverse condemnation is the only remedy" when a landowner believes the government has taken an interest in its property without adhering to the eminent-domain proceedings in Indiana Code section 32-24-1).

N.E.2d 405, 406 (N.Y. 1976) ("Under the 'in rem' theory of the nature of title acquired by eminent domain, the condemnor takes title to land free of all encumbrances and inconsistent proprietary rights and extinguishes all interests and estates in the property."); *see also New England Cont'l Media, Inc. v. Town of Milton*, 588 N.E.2d 1382, 1384 (Mass. Ct. App. 1992) ("Generally, an eminent domain taking in fee simple extinguishes all other interests in the subject property. In particular, where an easement exists the taking of the servient estate will destroy the easement rights of the dominant estate.") (internal citations omitted). Likewise, the default rule in federal eminent-domain cases "is that a taking in fee simple establishes new title and extinguishes all existing possessory and ownership interests not specifically excepted." *U.S. v. 194.08 Acres of Land, More or Less, Situated in St. Martin Parish, State of La.*, 135 F.3d 1025, 1029 (5th Cir. 1998).

[18] In a similar vein, we have previously held that the exercise of eminent domain extinguished the reversionary interest in a deed, because such a "restriction cannot be enforced against the condemning authority as long as that entity's use is for a public purpose; the only remedy for a violation of that restriction is monetary compensation." *Jensen v. City of New Albany*, 868 N.E.2d 525, 529 (Ind. Ct. App. 2007). We conclude that Carmel extinguished Barham's easement in Threel Road when it acquired Threel Road in its entirety in the *County Line Action*; therefore, there was no easement to take in the current case. Having established that there was no easement at the time of Carmel's

acquisition in this case, we now turn our attention to the ingress-egress and traffic-flow rules.

## C.    Ingress-Egress and Traffic-Flow Rules

[19]   To the extent the parties argue over whether a compensable taking occurred in *this* case, they attempt to characterize this case as either one of traffic flow or the taking of ingress and egress rights.  Either way, our conclusion is the same:  Barham was not entitled to compensation for the closure of access to Threel Road in this case.  Carmel had already acquired Threel Road in the *County Line Action*, thereby extinguishing whatever rights Barham had had in Threel Road, and the closing of Barham's access by the taking in this case is non-compensable under the ingress-egress and traffic-flow rules.  Under the ingress-egress rule, an interference with those rights is compensable only if it "is substantial or material." *State v. Dunn*, 888 N.E.2d 858, 864 (Ind. Ct. App. 2008), *trans. denied*.  The interference here is neither of those because Barham maintains sufficient access to run its business via Aronson Road.  *See State v. Tolliver*, 246 Ind. 319, 205 N.E.2d 672 (1965) (concluding that the interference with ingress and egress rights was substantial and material when it left only one access point, which was insufficient for the landowner to run its business *at all*).  Similarly, under the traffic-flow rule, "the mere reduction in or redirection of traffic flow to a commercial property is not a compensable property right[,]" which would make Barham's loss of access non-compensable as two access points remain untouched.  *State v. Kimco of Evansville, Inc.,* 902 N.E.2d 206, 214 (Ind. 2009); *see also AAA Federal Credit Union*, 79 N.E.3d at 406 (holding that the

closure of a landowner's access to U.S. 31 was not compensable because, while the new route was more circuitous and inconvenient, other access points remained untouched). In short, the trial court erred when it denied Carmel's motion for partial summary judgment on the issue of whether Barham was entitled to compensation specifically for the loss of access to Threel Road.

[20] The judgment of the trial court is reversed, and we remand with instructions for to grant Carmel partial summary judgment on this issue.

May, J., and Mathias, J., concur.